Pamela Jean JOHNSON,
Petitioner, Respondent,

v.

Dean Dwayne O'NEILL, Appellant.

No. C3–90–317.

Court of Appeals of Minnesota.

Oct. 23, 1990.

Bradford Colbert, St. Paul, for appellant.

Gary M. Peterson, Faribault, for respondent.

Considered and decided by LANSING, P.J. and SCHUMACHER and MULALLY,* JJ.

## OPINION

LANSING, Judge.

At issue in this appeal is whether incarceration on an unrelated offense can constitute an unjustified self-limitation of income for purposes of child support. Because there is no indication that the obligor's incarceration was intended for the purpose

* Acting as judge of the Court of Appeals by ap-   pointment pursuant to Minn. Const. art. VI, § 2.

of limiting income, we reverse and remand for determination of a support obligation based on actual earnings.

## FACTS

Dean O'Neill was adjudicated the father of K.L.J. in an uncontested paternity action in 1986. The court ordered O'Neill to pay $355 per month in child support and $7,000 in past child support.[1] At the time of the order O'Neill earned approximately $14,000 per year. He remained current in his payments until December of 1988. He also paid $3,000 of the arrearages accumulated before entry of the judgment.

In December, 1988 O'Neill was incarcerated on an unrelated matter and remains in custody. He currently earns $64 per month from his prison job. O'Neill unsuccessfully moved for modification of his child support obligation and he appeals the denial.

## ISSUE

Did the trial court err in denying obligor's motion for a modification of his child support obligation?

## ANALYSIS

The terms of a decree relating to child support may be modified upon a showing of substantially decreased earnings of a party which makes the terms "unreasonable and unfair." Minn.Stat. § 518.64, subd. 2 (1988). The trial court acknowledged that O'Neill's incarceration decreased his income but concluded that because his criminal act was intentional, his incarceration was an unjustifiable self-limitation of income.

Earning capacity may be used as an appropriate measure of income if an obligor has unjustifiably self-limited his or her earnings. *Beede v. Law*, 400 N.W.2d 831, 835–36 (Minn.App.1987). Johnson does not contend, and it would strain reason to believe, that O'Neill volitionally sought incarceration to avoid his child support payments. O'Neill's payment record also weighs against that theory. The in-

tentional self-limitation of income that has justified the imputation of earning capacity applies to cases in which an obligor intentionally limits income and avoids the responsibility to pay child support. *See, e.g., Hedburg v. Hedburg*, 412 N.W.2d 43, 46–47 (Minn.App.1987) (remanded for findings on obligor's bad faith).

This doctrine has not been extended to apply to every intentional act which results in negative economic consequences. To extend it to such acts would distort the doctrine and result in inappropriate and additional punishment. Intention to commit a crime does not automatically translate into intention to limit income. *See Leasure v. Leasure*, 378 Pa.Super. 613, 549 A.2d 225, 227 (1988) (incarceration is usually an involuntary condition that justifies reduction in child support obligations); *In re Marriage of Edmonds*, 53 Or.App. 539, 542, 633 P.2d 4, 5 (Or.Ct.App.1981) (the better rule should be that a parent is not liable for payments while incarcerated unless it is shown that he or she has income or assets to make such payments).

## DECISION

The trial court correctly determined that O'Neill's income had decreased but incorrectly imputed earning capacity under the self-limitation of income doctrine. Because it is unreasonable and unfair to require a support obligation which is more than six times an obligor's current income, we reverse and remand to the trial court to compute a child support obligation based on O'Neill's actual income.

Reversed and remanded.

1. The monthly amount was increased to $386.95 by cost of living adjustments.