In re the MARRIAGE OF Mary Kathryn PHILLIPS and Alan Dale Phillips.

Upon the Petition of Mary Kathryn Phillips Hart, Petitioner–Appellant,

And Concerning Alan Dale Phillips, Petitioner–Appellee.

No. 92–60.

Court of Appeals of Iowa.

Oct. 27, 1992.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., Kevin E. Kaufman, County Atty., and E. Dean Metz, Asst. Atty. Gen., for petitioner-appellant.

Susan M. Dulek, Legal Services Corp. of Iowa, Iowa City, for petitioner-appellee.

* Senior Judge from the 2nd Judicial District serving on this court by order of the Iowa Supreme

Heard by HAYDEN, P.J., HABHAB, J., and McCARTNEY, Senior Judge.*

HAYDEN, Presiding Judge.

This appeal arises from an order modifying the child support obligation of Alan Phillips. The trial court found Alan's incarceration constituted a substantial change in circumstances justifying the modification. We disagree and reverse the trial court decision. We hold the child support obligor's incarceration for third-degree sexual abuse of his stepdaughter does not constitute a change of circumstances justifying a modification. However, we hold Mary's increased income constitutes a substantial change which justifies modification of Alan's support obligation.

The marriage of Alan and Mary Phillips was dissolved on February 13, 1991. Mary was given physical custody of the parties' two minor children. Pursuant to the dissolution decree, Alan was ordered to pay $130.77 per week as child support for his two sons.

The record reveals Mary was receiving Aid to Families with Dependent Children (AFDC) benefits prior to trial until October 1, 1991. At the time of trial Alan was employed by Burlington Northern Railroad and was earning a net monthly income of $1578.50.

On February 27, 1989, Alan was convicted of sexual abuse in the third degree involving his stepdaughter. Alan was sentenced to an indeterminate term not to exceed five years. Alan filed a request to delay issuing of mittimus until August 19, 1990, in order that he could become vested in his railroad pension. The trial court granted Alan's request to delay mittimus.

The incomes of both parents have changed since the issuance of their dissolution decree. Alan's income while incarcerated is approximately $36 per month. Since the dissolution Mary has obtained a full-time job. Her net monthly income is $1139.

Court.

Based upon his incarceration, Alan filed an application to modify his child support obligation. Alan alleged his incarceration constituted a substantial change in circumstances. On December 19, 1991, the trial court found Alan's incarceration constituted a significant change in circumstances justifying modification and suspended his child support obligation until sixty days after his release from prison.

Because Mary received AFDC, her right to child support up to the amount of benefits expended was assigned to the State of Iowa. Due to the assignment, the State is the party appealing the trial court decision.

 I. Our review of an order on application to modify child support provisions is de novo. *In re Marriage of Vetternack*, 334 N.W.2d 761, 762 (Iowa 1983) (citing *Mears v. Mears*, 213 N.W.2d 511, 515–16 (Iowa 1973); Iowa R.App.P. 4). The trial court, however, has reasonable discretion in determining whether modification is warranted. *Id.* A petition to modify must be decided on the facts of each case. The trial court's discretion will not be disturbed on appeal in the absence of a failure to do equity. *Id.* (citing *Norenberg v. Norenberg*, 168 N.W.2d 794, 797 (Iowa 1969)).

 II. Modification of child support provisions of a dissolution decree is justified only if there has been a substantial change in circumstances since the entry of the original dissolution decree. *In re Marriage of Habben*, 260 N.W.2d 401, 403 (Iowa 1977) (citations omitted); Iowa Code § 598.21 (1991). The party seeking the modification has the burden to show such a change has occurred. *In re Marriage of Bergfeld*, 465 N.W.2d 865, 869 (Iowa 1991) (citing *Ellis v. Ellis*, 262 N.W.2d 265, 267 (Iowa 1978)). Of course not every change of circumstances is sufficient to justify modification of child support provisions. *Sandler v. Sandler*, 165 N.W.2d 799, 800 (Iowa 1969). "A decree is not to be modified unless its enforcement will be attended by positive wrong or injustice as a result of changed circumstances." *Ellis*, 262 N.W.2d at 267.

On appeal, Alan contends the changed circumstances justifying modification are (1) his incarceration and (2) Mary's increased income. First we focus on whether Alan's incarceration constitutes a changed circumstance which justifies modification of his support obligation.

III. Other jurisdictions are divided on the issue of whether incarceration of an obligor justifies the reduction of a child support obligation. Under the broadest summary, courts have decided this issue based on whether the obligor possessed assets against which the obligation could be charged and/or the voluntary nature of the obligor's criminal activity.

A. *Jurisdictions Granting Modification:*

State courts have granted modification to incarcerated obligors on different grounds. The majority of these courts based their decisions to modify on the fact the incarcerated obligor lacked other possessions against which the support obligation could be charged. *See Clemans v. Collins*, 679 P.2d 1041 (Alaska 1984) (court remanded for determination of whether incarcerated obligor possessed other assets to meet obligation); *Pierce v. Pierce*, 162 Mich.App. 367, 412 N.W.2d 291 (1987) (court granted modification because obligor lacked other assets); *Foster v. Foster*, 99 A.D.2d 284, 471 N.Y.S.2d 867 (1984) (court granted modification even though obligor had equity in marital home).

The following cases illustrate situations in which courts granted modification based on the fact other assets did not exist. In *Foster v. Foster* the New York Supreme Court, Appellate Division, addressed the issue of whether to modify an incarcerated parent's support obligation. *Foster*, 99 A.D.2d at 284, 471 N.Y.S.2d at 867. The obligor had been convicted of first-degree manslaughter. *Id.* at 284–85, 471 N.Y.S.2d at 868. At the time of modification, the obligor had equity in a marital home which was being used by his former wife. *Id.* at 286, 471 N.Y.S.2d at 869. The court noted the wife was not planning to sell the home in the future so reliance upon his equity

interest was "an inappropriate and unsatisfactory way to provide for the support of a child which obviously requires current cash." *Id.* (citations omitted). The court quoted with approval *Edmonds v. Edmonds,* a case in which the Oregon Court of Appeals granted modification:

"[w]here a noncustodial parent is imprisoned for a crime other than nonsupport (or for civil contempt for failure to pay the same) ... the better rule should be that the parent is not liable for such payments while incarcerated unless it is affirmatively shown that he or she has income or assets to make such payments."

*Id.* at 285, 471 N.Y.S.2d at 869 (quoting *Edmonds v. Edmonds,* 53 Or.App. 539, 633 P.2d 4, 5 (1981), *overruled by In re Marriage of Willis,* 109 Or.App. 584, 820 P.2d 858 (1991)). The court in *Foster* concluded evidence showed the obligor possessed no assets against which the obligation could be charged. *Id.* at 285–86, 471 N.Y.S.2d at 869. The court suspended the support obligation of the incarcerated parent until his release from prison. *Id.* at 286, 471 N.Y.S.2d at 870. We recognize *Foster* remains the law in New York; however, *Edmonds* was overruled in 1991 by *In re Marriage of Willis. Willis,* 820 P.2d 858 (court denied modification even though obligor possessed no other assets; denial also based upon view criminal conduct cannot excuse obligation).

Some courts have granted modification because they viewed incarceration as an involuntary loss of employment which justifies modification. *See People ex rel. Meyer v. Nein,* 209 Ill.App.3d 1087, 154 Ill.Dec. 436, 568 N.E.2d 436 (1991) (court granted modification; rejected argument incarceration was a voluntary loss of employment); *Johnson v. O'Neill,* 461 N.W.2d 507 (Minn. Ct.App.1990) (court granted modification because incarceration was not self-limitation of income); *Leasure v. Leasure,* 378 Pa.Super. 613, 549 A.2d 225 (1988) (court granted modification because obligor lacked assets; rejected voluntary decrease in income argument). In *People ex rel. Meyer v. Nein* the obligor was incarcerated upon a negotiated plea to a felony drug charge. *People ex rel. Meyer v. Nein,* 209 Ill.App.3d 1087, 154 Ill.Dec. 436, 568 N.E.2d 436, 438 (1991). The Illinois Court of Appeals granted modification and suspended the incarcerated parent's obligation while he was in prison. *Id.* The court rejected the argument the incarcerated parent voluntarily reduced his income. *Id.* 154 Ill.Dec. at 437, 568 N.E.2d at 437. The court viewed incarceration as an *in* voluntary loss of employment and therefore concluded the obligor should not be barred from modification. *Id.* However, the court noted "incarceration, as a foreseeable result of criminal activity, does not *ipso facto* relieve one of the obligation to pay child support." *Id.* 154 Ill.Dec. at 438, 568 N.E.2d at 438. In *Johnson v. O'Neill* the Minnesota Court of Appeals granted modification because it found the obligor's incarceration was not intended for the purpose of limiting income. *Johnson,* 461 N.W.2d at 507–08. The court remanded for a computation of an obligation based on the obligor's actual income while incarcerated. *Id.* at 508.

### B. *Jurisdictions Denying Modification:*

Other jurisdictions have denied modification to incarcerated obligors. Denial of modification has also been based on different grounds. Some state courts have denied modification because the obligor possessed other assets against which the support obligation could be charged. *See Division of Child Support Enforcement ex rel. Harper v. Barrows,* 570 A.2d 1180 (Del.Supr.1990) (court denied modification because incarcerated obligor possessed other assets); *Vetternack v. Vetternack,* 334 N.W.2d 761 (Iowa 1983) (court denied modification because obligor had equity in marital home); *Sodders v. Sodders,* 210 Neb. 276, 313 N.W.2d 927 (1981) (court denied modification because a trust existed upon which obligor could draw to satisfy his support obligation); *Noddin v. Noddin,* 123 N.H. 73, 455 A.2d 1051 (1983) (court denied modification because obligor possessed at least one valuable asset and voluntarily engaged in criminal activity); *Red-*

mon v. Redmon, 823 S.W.2d 463 (Ky.Ct. App.1992) (court denied modification because obligor did not claim indigency or lack of assets); Alexander v. Alexander, 417 So.2d 92 (La.Ct.App.1982) (court denied modification because obligor incurred other debt after support order filed, thereby, creating own inability to meet support payments); Proctor v. Proctor, 773 P.2d 1389 (Utah Ct.App.1989) (court denied modification even though incarcerated obligor possessed other asset).

The following cases illustrate situations in which courts denied modification based on the fact other assets existed. In Sodders v. Sodders the obligor was incarcerated for attempting to have his former wife murdered. Sodders, 313 N.W.2d at 927. A trust existed upon which the obligor could draw to satisfy his support obligation. Id. The Nebraska Supreme Court held the incarceration and loss of income did not justify a reduction in his child support. Id. The court refused to suspend his support obligation while he was incarcerated. Id. In Division of Child Support Enforcement ex rel. Harper v. Barrows the Supreme Court of Delaware held child support obligations should not be suspended or discharged if an affirmative showing has been made that an incarcerated support obligor has available assets. Harper, 570 A.2d at 1183. The court also denied modification because it found the obligor had other assets which could be liquidated to satisfy his support obligation. Id.

Other courts have held the incarcerated obligor remained liable during incarceration even though the obligor possessed no other assets against which the obligation could be charged. See Ohler v. Ohler, 220 Neb. 272, 369 N.W.2d 615 (1985) (court denied modification even though incarcerated obligor possessed no other assets); In re Marriage of Willis, 109 Or.App. 584, 820 P.2d 858 (1991) (court denied modification even though obligor possessed no other assets; voluntary criminal conduct cannot excuse obligation); Parker v. Parker, 152 Wis.2d 1, 447 N.W.2d 64 (Ct.App.1989) (petition for review denied) (court denied modification even though incarcerated obligor possessed no other assets). In Ohler v. Ohler the Nebraska Supreme Court denied modification to an incarcerated support obligor even though the parent possessed no assets. Ohler, 369 N.W.2d at 617, 618. The court noted the issue in Ohler differed from the one it addressed in Sodders. Id. 369 N.W.2d at 617. In Sodders the court denied modification because a trust fund existed upon which the obligor could draw to satisfy his support obligation. Sodders, 313 N.W.2d at 927. In Ohler the incarcerated obligor did not possess any "currently available" assets against which his child support obligation could be charged. Ohler, 369 N.W.2d at 617. The court stated neither the incarceration for a period of fifteen years nor the resulting loss of income justified a suspension of support. Id. at 618. The court emphasized the obligor did not enter court with clean hands and equity should not provide relief to a party who voluntarily engages in criminal activity. Id. In Parker v. Parker the obligor also failed to possess assets at the time he was incarcerated for felony theft. Parker, 447 N.W.2d at 64. The Wisconsin Court of Appeals refused to excuse the incarcerated parent's obligation. Id. at 65. The court reasoned the obligor's imprisonment was a direct result of his willful, voluntary criminal activity. Id. We note further review on this case was denied. Id. at 64.

Other jurisdictions have denied modification based on the voluntariness of the obligor in his actions which led to incarceration. See Noddin v. Noddin, 123 N.H. 73, 455 A.2d 1051 (1983) (court denied modification because obligor possessed at least one valuable asset and criminal activity was voluntary); Koch v. Williams, 456 N.W.2d 299 (N.D.1990) (court denied modification based on voluntariness of obligor's actions); In re Marriage of Willis, 109 Or.App. 584, 820 P.2d 858 (1991) (court denied modification even though obligor possessed no other assets; voluntary criminal conduct cannot excuse obligation). In In re Marriage of Willis a support obligor, who had been incarcerated for possession of a controlled substance, was denied modification. Wil-

*lis*, 820 P.2d at 859. Even though the obligor lacked assets, the court denied modification because it concluded such a financial situation could not excuse criminal conduct and the obligor had voluntarily engaged in criminal activity which led to his incarceration and loss of income. *Id.* at 860. We find *Willis* is a significant case because it overruled *Edmonds*, an earlier case in which the same court had granted modification. *See id.* Several cases decided after *Edmonds*, which also granted modification, cited *Edmonds* and its arguments as authority. *Clemans*, 679 P.2d at 1041–42; *Meyer*, 154 Ill.Dec. at 437 n. 8, 568 N.E.2d at 437 n. 8; *Pierce*, 412 N.W.2d at 292; *Johnson*, 461 N.W.2d at 508; *Foster*, 99 A.D.2d at 286, 471 N.Y.S.2d at 869; *Leasure*, 549 A.2d at 227. In *Willis*, however, the court found the bases for the *Edmonds* decision were incorrect and conflicted with other well-established principles of domestic relations law. *Willis*, 820 P.2d at 859. The court noted "if an obligor, acting in bad faith, voluntarily worsens his financial position so that he cannot meet his obligations, he cannot obtain a modification of support." *Id.* (citations omitted). The court, which had abandoned the unclean hands doctrine in *Edmonds*, reinstated its reliance upon the doctrine in *Willis*. *Id.* at 860. We agree with the court's reasoning in *Willis*. The courts in *Ohler* and *Parker* used similar reasoning and reached the same conclusion.

IV. Case law clearly shows courts have both granted and denied modification based on whether the incarcerated obligor possessed other assets against which the obligation could be charged. The Iowa Supreme Court has provided some guidance. In *In re Marriage of Vetternack* the court addressed whether modification of a child support order of an incarcerated parent who possessed other assets sufficient to meet the obligation would be equitable. *Vetternack*, 334 N.W.2d at 763. The court denied modification on the basis it would be inequitable. *Id.* The court reasoned the incarcerated parent possessed other assets against which the support obligation could be charged. *Id.*

This case, however, is distinguishable from *Vetternack* and other cases which have granted modification on the basis the obligor possessed other assets against which the obligation could be charged. Alan, the incarcerated parent, possesses no assets which could be used to satisfy his support obligation. Alan's railroad pension is not an asset upon which he could rely to meet his obligation; the pension is not a "currently available" asset. *See Ohler*, 369 N.W.2d at 617. The pension clearly would not meet the need of current cash because the benefits would not be available until Alan reaches age sixty-two, which would be in the year 2015. *See Foster*, 99 A.D.2d at 286, 471 N.Y.S.2d at 869. In addition, any judgment rendered could continue in force for a maximum of only twenty years, thus falling three years short of the earliest date upon which Alan's pension could be distributed. Iowa Code §§ 614.-1(6) (twenty-year limitation), 624.23(1) (ten-year limitation upon real estate) (1991). The question of whether incarceration which results in rendering the obligated parent *without financial means* constitutes a material change in circumstances such as to warrant a suspension of child support payments during incarceration is one of first impression for this court.

In resolving this issue we considered the fact Alan possesses no other assets. We now follow the decisions of *Ohler*, *Willis*, and *Parker*, which addressed this exact issue. *See Ohler*, 369 N.W.2d 615; *Willis*, 820 P.2d 858; *Parker*, 447 N.W.2d 64. Based on those three decisions, we hold Alan's lack of assets does not justify modification of his support obligation. The lack of assets should not serve as a shield against a child support obligor's responsibilities. We also considered the fact Alan's change of economic circumstances was the result of his own voluntary actions. Our courts have recognized modification of a child support obligation should be denied if one's inability to pay child support is voluntary. *In re Dawson*, 467 N.W.2d 271, 275 (Iowa 1991) (citations omitted); *Ellis*, 262 N.W.2d at 268 (citations omitted). A court must deny a petition for modification if the change in the

party's financial condition is the result of the party's voluntary wastage of his or her own talents and assets. *Ohler,* 369 N.W.2d at 617 (citing *Noddin,* 455 A.2d at 1053); *see In re Marriage of Wahlert,* 400 N.W.2d 557, 560 (Iowa 1987) ("any voluntariness in diminished earning capacity has become increasingly an impediment to modification"). We cite with approval the language of the Oregon Court of Appeals in *Willis:*

> Criminal conduct of any nature cannot excuse the obligation to pay support. We see no reason to offer criminals a reprieve from their child support obligations when we would not do the same for an obligor who voluntarily walks away from his job. Unlike the obligor who is unemployed or faced with a reduction in pay through no fault of his own, the incarcerated person has control over his actions and should be held to the consequences.

*Willis,* 820 P.2d at 860. Under the "unclean hands" doctrine a court in equity may deny relief based on a party's inequitable, unfair, dishonest, fraudulent, or deceitful conduct. *Ellwood v. Mid States Commodities, Inc.,* 404 N.W.2d 174, 184 (Iowa 1987) (citation omitted). We invoke the doctrine to protect the integrity of the court where granting affirmative relief would run contrary to public policy. *In re Estate of Herm v. Henderson,* 284 N.W.2d 191, 196 (Iowa 1979). Strong public policy exists for the protection of the best interests of the children. Suspending a parent's child support obligation while he is incarcerated provides no benefit to the children. *Ohler,* 369 N.W.2d at 618. The children's needs will not be lessened while Alan is in prison. We apply the doctrine in this context and agree criminal conduct should not excuse a support obligation. *See id.* at 615. One who seeks equity must enter court with clean hands. *Id.* at 618. Incarceration is a foreseeable consequence of criminal activity. *Id.* We hold Alan's inability to pay child support was voluntary.

Our focus on the voluntariness of Alan's actions is not misplaced especially in light of the crime of sexual abuse of his step-daughter. In *Parker* the court stated consideration of the crime that resulted in the incarceration was proper when determining whether modification should be granted. *Parker,* 447 N.W.2d at 66. Alan engaged in this heinous crime at his own peril and reduced his income as a result. Suspending Alan's obligation would only harm his children and would not be in their best interests. "A person who has a support obligation should not profit from his criminal conduct, particularly at his children's expense." *Willis,* 820 P.2d at 860. Equity is not available to an individual in Alan's position.

In addition, Alan's incarceration, the alleged changed circumstance, is not permanent. The Iowa Supreme Court has stated: "[t]he changed circumstance[ ] had to be 'material and substantial, not trivial, more or less permanent or continuous, not temporary.'" *In re Marriage of Bergfeld,* 465 N.W.2d 865, 870 (Iowa 1991) (quoting *Mears v. Mears,* 213 N.W.2d 511, 515 (Iowa 1973)).

We hold Alan's incarceration for sexual abuse fails to constitute a substantial change in circumstances which would justify modification of his child support obligation. It would not be equitable to suspend his responsibility for his children while he is incarcerated. By denying modification we follow the current trends in Iowa case law, which are (1) a reluctance to modify decrees and (2) emphasis on a present inability to pay support has lessened, whereas emphasis on a long range capacity to earn money has become more of a consideration. *Vetternack,* 334 N.W.2d at 763. We also hold Alan's support obligation continues to accrue during his incarceration. We reverse the trial court decision and deny modification based on Alan's incarceration.

V. Finally, we address whether Mary's increased income constitutes a substantial change in circumstances which was not contemplated by the trial court at the time of dissolution. We hold the increase constitutes a substantial change in circum-

stances which justifies adjusting the amount of Alan's support obligation.

The general rule with regard to increased income as a change in circumstances is "where a change of financial condition of one or both of the parties is relied upon it must be substantial." *Sandler v. Sandler,* 165 N.W.2d 799, 801 (Iowa 1969) (citations omitted). Mary's increased income is substantial. The difference in income as an AFDC beneficiary and as an employee earning $18,000 per year is substantial. It is likely Mary's increased income is continuous and permanent. In Iowa both parents have the same legal duty to support their children. *In re Deierling,* 421 N.W.2d 168, 170 (Iowa App. 1988) (citations omitted). It would not be equitable to require Alan to continue carrying the full burden of supporting their two children.

For purposes of adjusting the child support obligation pursuant to the guidelines, we instruct the trial court to use Mary's current net monthly income and Alan's earning capacity of $1578.50 per month. *See generally Ohler,* 369 N.W.2d 615; *Willis,* 820 P.2d 858; *Parker,* 447 N.W.2d 64. The earnings figure of $1578.50 represents the net monthly income Alan was earning while he was employed at Burlington Northern Railroad prior to his incarceration. We remand to the trial court to apply the guidelines and adjust Alan's support obligation accordingly. We do not retain jurisdiction.

We recognize as long as Alan cannot obtain a higher paying job in prison most of his child support arrearages will continue to accrue. Unpaid child support accrues, and the arrearages may not be modified or forgiven. *In re Marriage of Welsher,* 274 N.W.2d 369, 372 (Iowa 1979) (citations omitted). The child support payments ordered by the original dissolution decree which have accrued are vested and may not be taken away. *Matter of Evans,* 267 N.W.2d 48, 52 (Iowa 1978) (citations omitted). In addressing Alan's argument the accrued support payments will hinder his rehabilitation upon release from prison, we determine the monthly obligation can be

adjusted as his financial situation then requires. *Koch,* 456 N.W.2d at 302 (citing *Parker,* 447 N.W.2d 64).

REVERSED AND REMANDED WITH INSTRUCTIONS.