Stacy FRANZEN and County
of Anoka, Respondents,

v.

Wade Devere BORDERS, Appellant.

No. C0–94–302.

Court of Appeals of Minnesota.

Sept. 20, 1994.

Ronald L. Greenley, Nicol & Greenley, Ltd., Anoka, for appellant.

Robert M.A. Johnson, Anoka County Atty., Paul C. Clabo, Asst. County Atty., Anoka, for respondents.

Considered and decided by HARTEN, P.J., and SCHUMACHER and SHORT, JJ.

## OPINION

SCHUMACHER, Judge.

Appellant Wade Devere Borders challenges the district court's order that set his monthly support at $447. Border argues that the court erred by (1) concluding that he unjustifiably self-limited his income; (2) concluding that incarceration is involuntary unemployment or underemployment for purposes of Minn.Stat. § 518.551, subd. 5b(d) (Supp.1993); (3) determining that room and board provided while incarcerated was "imputed income"; and (4) setting final support greater than the temporary order without finding a substantial change of circumstances. Borders also contends that the district court abused its discretion by rejecting his claim that he previously paid support. We affirm in part, reverse in part, and remand.

## FACTS

Respondent Stacy Franzen had children in 1987 and 1989. In 1991, Borders was convicted of making terroristic threats against a third party and given a stayed sentence. Subsequently, Franzen and Borders lived together. In July 1991, Borders violated his probation by assaulting Franzen, and he was incarcerated at the Stillwater facility.

In January 1992, Franzen and respondent Anoka County filed a paternity suit against Borders. In November 1992, the district court set Borders' temporary monthly support obligation at $75.63, based on his prison income. Franzen and Anoka later filed a second paternity suit against Borders. At a February 1993 hearing, Borders admitted paternity of the children, argued that support should be suspended while he was in

prison, and claimed that his back support should be forgiven because, when he lived with Franzen and the children, he had provided them with monetary or in-kind support. Borders was then making $5 an hour at his prison job. By letter of February 12, Borders' attorney stated that Borders might be transferred to the Lino Lakes facility. Borders later testified that he believed he could earn up to $1.50 per hour while at Lino Lakes.

The district court consolidated the paternity actions, adjudicated Borders the father of both children, and stated that Borders' support obligation would be addressed by separate order. In a May 18, 1993 letter to his attorney, Borders stated that he would transfer to Lino Lakes, that the transfer was "my choice!," and that his hourly wage would be $.50 or $.55.

In a May 25, 1993 report, the child support office stated that Borders grossed $700 per month at Stillwater. The report asked the court to impute $200 per week of income to Borders because the prison provided Borders' room and board. In June 1993, Borders transferred to Lino Lakes where he earned $.55 per hour and later $.70 per hour.

By order of August 25, 1993, the district court found Borders could earn $17–$18 per hour in the community, imputed income to Borders for room and board, and found his net monthly income to be $1,490. The district court then set Borders' monthly support obligation at $447 and his "back support" obligation at $5,899.63.

Borders moved for amended findings or a new trial. A corrections officer filed an affidavit indicating that Borders had sought the transfer to the Lino Lakes facility and that the corrections department had neither required nor encouraged it. The district court denied Borders' motions, finding that the $447 monthly support obligation appropriate because (1) Borders' unjustifiably self-limited his income both by going to prison and by transferring from Stillwater to Lino Lakes; (2) $200 weekly income could be imputed to Borders for the room and board provided by the prison; and (3) this case justified an upward deviation from the support guidelines.

## ISSUES

1. Did the district court err by ruling that Borders unjustifiably self-limited his income?

2. Must incarceration result in voluntary unemployment or underemployment?

3. Did the district court err by imputing income to Borders for the room and board provided while he was incarcerated?

4. Did the district court err by setting Borders' final support obligation without finding a substantial change in circumstances since the temporary order?

5. Did the district court abuse its discretion by setting Borders' past support obligation?

## ANALYSIS

We will not reverse a support determination in a paternity action absent a "clear abuse of discretion." *Pitkin v. Gross,* 385 N.W.2d 367, 368 (Minn.App.1986). This court does not defer to a district court's interpretation of a statute. *See Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985) (statutory construction "is clearly a question of law").

1. Before 1991, courts set child support based on an obligor's earning capacity if the obligor decreased or eliminated his or her income in a bad faith attempt to avoid paying support. *Schneider v. Schneider,* 473 N.W.2d 329, 332 (Minn.App.1991). The current law states:

If the court finds that a parent is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of imputed income. A parent is not considered voluntarily unemployed or underemployed upon a showing by the parent that the unemployment or underemployment: (1) is temporary and will ultimately lead to an increase in income; or (2) represents a bona fide career change that outweighs the adverse effect of that parent's diminished income on the child.

Minn.Stat. § 518.551, subd. 5b(d) (Supp. 1993). The statute does not define "voluntarily unemployed or underemployed," but excepts two categories of persons from being classified as "voluntarily unemployed or underemployed." Generally, statutory exceptions are "construed to exclude all others." Minn.Stat. § 645.19 (1992). To apply this maxim here, however, would classify as "voluntarily unemployed or underemployed," all obligors who do not fit either category, without reference to whether their unemployment or underemployment was "voluntary." The legislature could not have intended courts to classify obligors as "voluntarily unemployed or underemployed" without an examination of whether the obligor chose to be unemployed or underemployed. *See* Minn. Stat. § 645.17(1) (1992) (legislature does not intend absurd result). Thus, imputation of income to a support obligor under current law is appropriate if the support obligor chose to be unemployed or underemployed and neither statutory condition applies.[1]

2. Next, Franzen and Anoka County contend that incarceration results in voluntary unemployment or underemployment. In *Johnson v. O'Neill,* 461 N.W.2d 507, 507 (Minn.App.1990), a support obligor moved for reduced support after he was incarcerated. Applying the pre–1991 law, the district court denied the motion because the obligor's criminal act had been intentional. This court reversed, stating that the

> doctrine [of justifiable self-limitation of income] has not been extended to every intentional act which results in negative economic consequences. To extend it to such acts would distort the doctrine and result in inappropriate and additional punishment. Intention to commit a crime does

not automatically translate into intention to limit income.

*Id.* at 508 (citations omitted).

 "Incarceration is usually an involuntary condition that justifies reduction in child support obligations." *Johnson,* 461 N.W.2d at 508 (citing *Leasure v. Leasure,* 378 Pa.Super. 613, 549 A.2d 225, 227 (1988)).[2] Here, because there is no evidence that Borders sought his Stillwater incarceration, while he was there, his incarceration was involuntary and he was not voluntarily unemployed or underemployed under Minn.Stat. § 518.551, subd. 5b(d). For this reason, his pre-incarceration income could not be imputed to him. Further, the involuntary nature of Borders' incarceration at Stillwater distinguishes it from his voluntary transfer to Lino Lakes. Thus, the income to be imputed to Borders at Lino Lakes is the income he earned at Stillwater.

Here, the district court distinguished *Johnson,* stating that Borders' incarceration is "directly related to [Borders'] relationship with the custodial parent," whereas in *Johnson* the obligor was incarcerated on an unrelated matter. *Johnson,* 461 N.W.2d at 508. The nature of the crime for which a support obligor is incarcerated is a factor considered in some foreign cases. To adopt the distinction here, however, would be to make it not just a factor, but dispositive. We will not do so, especially in light of the statute addressing the circumstances under which it is proper to impute income to a support obligor. *See Tereault v. Palmer,* 413 N.W.2d 283, 286 (Minn.App.1987) (extending existing law is for supreme court or legislature, not court of appeals), *pet. for rev. denied* (Minn. Dec. 18, 1987).

---

1. Here, the district court stated that Borders' transfer to Lino Lakes was "voluntary." Also, neither statutory exception to voluntary unemployment or underemployment applies to the decrease in Borders' income resulting from the transfer. Therefore, while at Lino Lakes, Borders is voluntarily underemployed, and the district court should impute income to him while he is there.

2. *Johnson* also cites *Edmonds v. Edmonds,* 53 Or.App. 539, 633 P.2d 4, 5 (Ct.App.1981). *Johnson,* 461 N.W.2d at 508. While *Edmonds* was

overruled, the case overruling *Edmonds,* was reversed. *See Willis v. Willis,* 109 Or.App. 584, 820 P.2d 858 (Ct.App.1991), *rev'd* 314 Or. 566, 840 P.2d 697 (1992). In Oregon, bad faith is a statutory requirement for imputing income to a support obligor. ORS 107.135(3)(c). The Oregon Supreme Court reversed the Oregon Court of Appeals in *Willis* because the court of appeals had not applied the bad faith provision of the statute. As Minnesota's new statute lacks an analogous bad faith provision, *Edmonds* and *Willis* are distinguishable.

Franzen and Anoka County also ask this court to overrule *Johnson,* noting that foreign case law is split on whether incarceration justifies a reduced or suspended support obligation. *See, e.g., Blickenstaff v. Blickenstaff,* 71 Wash.App. 489, 859 P.2d 646, 650–51 (Ct.App.1993) (surveying cases); *Phillips v. Phillips,* 493 N.W.2d 872, 874–877 (Iowa Ct. App.1992) (surveying cases). The *Leasure* case cited in *Johnson,* however, notes that the authorities are split on the issue and rejects the position Franzen and Anoka County now ask this court to adopt. *Leasure,* 549 A.2d at 227. Because *Johnson* adopted authority which addressed the split in case law and rejected the position Franzen and Anoka County now ask us to take, their argument to overrule *Johnson* is unpersuasive.

3. For support purposes, "net income" includes

> in-kind payments received by the obligor in the course of employment, self-employment, or operation of a business if the payments reduce the obligor's living expenses.

Minn.Stat. § 518.551, subd. 5(b)(1) (Supp. 1993). Under this statute, the district court imputed income to Borders because the state provides Borders' "room and board" in prison. The district court admitted, however, that Borders did not receive the in-kind income "in the course of employment." Borders' support obligation cannot be justified by imputing income to Borders for room and board. *See* Minn.Stat. § 645.16 (1992) (when statute's application is clear, "the letter of the law shall not be disregarded under the pretext of pursuing the spirit").[3]

4. Borders alleges that the district court erred by setting his final monthly support obligation at an amount greater than his temporary support obligation without finding a substantial change in circumstances. *See* Minn.Stat. § 518.64, subd. 2 (Supp.1993).

Temporary orders "shall not" prejudice the rights of the parties or children which will be adjudicated later. Minn.Stat. § 518.131, subd. 9(a) (1992). After a temporary or final support order is issued, the district court may modify the order. Minn. Stat. § 518.64, subd. 1 (Supp.1993). The paternity statute separately authorizes temporary and final support obligations. *See* Minn.Stat. §§ 257.62, subd. 5 (1992); 257.66, subd. 3 (Supp.1993) (respectively). Because the order for temporary support is not the same as the order for final support, and because Minn.Stat. § 518.64 addresses not modification of the support *obligation,* but of the *order* for a support obligation, issuing an order for final support does not "modify" an existing order for temporary support; it creates a new support order. Thus, a finding of substantially changed circumstances is not necessary.

5. Borders alleges that the district court erred by setting his past support obligation without considering the money or in-kind support he provided directly to Franzen and the children when he was employed or received unemployment compensation. The record contains no cancelled checks or other documentation of Borders' claimed payments. We will not engage in speculation, and a support obligor "will not be heard to complain [about child support] when he has failed to provide this court with a reviewable record." *Taflin v. Taflin,* 366 N.W.2d 315, 319 (Minn.App.1985).

**DECISION**

The district court correctly disregarded the decrease in Borders' income resulting from his transfer from Stillwater to Lino Lakes. Because Borders' incarceration was involuntary, his preincarceration income cannot be imputed to him. Further, income cannot be imputed to Borders for room and board provided him while incarcerated. The district court did not err either by setting

---

3. We also note that Borders' support obligation cannot be justified as an upward departure from the support guidelines. Under Minn.Stat. § 518.551, subd. 5(i) (Supp.1993), a deviation from the guidelines must be supported by find-

ings on the criteria in Minn.Stat. § 518.551, subd. 5(b) (Supp.1993). Here, the district court did not make all of the necessary findings and inappropriately based the deviation, at least partially, on Borders' preincarceration income.

Borders' support obligation without finding a substantial change in circumstances or by setting his back-support obligation. On remand, the district court shall adjust Borders' support obligation accordingly.

**Affirmed in part, reversed in part, and remanded.**