[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The State of Connecticut initiated this action with a paternity petition served on the defendant on April 5, 2000 pursuant to General Statutes § 46b-162. The defendant, who was then incarcerated at the Walker Correctional Unit in Suffield, was transported to court pursuant to a writ of habeas corpus for a hearing on June 6, 2000. The defendant was found indigent and the court appointed Attorney Robert Romano to represent him. Pursuant to the defendant's motion, DNA tests were ordered. Subsequently the court appointed Attorney Sally Hodgdon as attorney for the minor child. On January 16, 2001 the case was tried to the court. Based in part on the DNA results, which indicated a 62,007 to 1 probability that the defendant was the father of the child, who is also named Quincy Roberts, the court ruled that the defendant is the child's father.
The defendant continues to be incarcerated and has been in the corrections system since prior to the child's birth on October 4, 1999. The State demands that a support order enter and arrearages be computed based on the defendant's earning capacity. Recent Connecticut case law supports this view. The defendant claims to have no income or assets and argues that the guidelines dictate a zero support order and arrearage. While acknowledging the weight of recent caselaw the defendant's counsel wished time to brief the issue in hopes of persuading the court to revisit the issue. Briefs have now been filed and the parties agree that the court decide the issue on the papers.
The court has studied the briefs of both parties and finds them singularly disappointing. Neither side offered thorough research or comprehensive legal analysis even of the well-trod path previously traveled in this division and our Superior Court worthy of what remains a closely divided legal issue. CT Page 7472
The defendant for his part offers isolated language found in General Statutes § 46b-171 to the effect that the court shall order such support as is "reasonably commensurate with the financial ability of the defendant. . . ." He argues that the absence in the statute of specific language directing the court to consider prior earning capacity precludes the court from entering a support order. Secondly he relies on a single 1992 Superior Court decision wherein a decision of the Family Support Magistrate ordering child support from an incarcerated obligor was reversed. Yrayta v. Bridgeforth sub nom. Commissioner of Human Resourcesv. Bridgeforth, 42 Conn. Sup. 126, 129, 604 A.2d 836 (Burns, J., Feb. 11, 1992). The defendant ignored provisions of the child support guidelines allowing for a deviation based on earning capacity and a significant body of case law both in Connecticut and nationwide which illuminate the issue. He even failed to cite additional, although equally dated, supporting decisions of the Superior Court and Family Support Magistrate Division including those by this very court. Parker v.Parker,[1] Superior Court, Judicial District of New London at Norwich, doc. no. 70489 (Mihalakos, J., Dec. 8, 1991); Laubenheimer v.Laubenheimer, 10 S.M.D. 55 (Lifshitz, F.S.M, May 16, 1996, approved with modification, Teller, J.); Gueits v. Correa, 8 S.M.D. 77 (1994).
The State's brief does manage to cite four often mentioned cases as authority for utilizing earning capacity to determine a support order. However it neglected to mention the child support guidelines or the specific application to the law to the present factual situation. Notwithstanding that it is probably the leading Connecticut case supportive of its position the State dismisses Charette v. Charette,19 Conn.L.Rptr. 187, 3 Conn.Ops. 579 (Zarella, J., 1997) as inapplicable, apparently because it "dealt with modifications of child support orders" rather than the establishment of a new order[2]. The State failed to provide citations, much less analysis, of subsequent Connecticut cases which address the issue.[3] Rather than research the status of the issue in sister states, the State opted to append to its brief a photocopy of a 1995 secondary source annotation which is instructive but hardly comprehensive or current. That source does illustrate that the issue of whether child support is abated during incarceration after a criminal conviction has evenly divided courts throughout the country. F. Wozniak, Annot., "Loss of Income Due to Incarceration as Affecting Child Support Obligation" 27 A.L.R.5th 540-592 (1995).
The guardian ad litem elected not to file a brief but rather filed a written recommendation order child support based on earning capacity established through the defendant's prior employment. She included some case law references including Charette.
Despite the failure of both sides to offer comprehensive argument CT Page 7473 the court finds the issue worthy of the revisit sought by the defendant. After due consideration the court is not persuaded that it should counter the recent trend in this State which holds the defendant liable to pay support based on earning capacity notwithstanding incarceration.
Connecticut law is clear that a self-imposed reduction in income combined with a failure by the obligor to utilize his earning capacity constitutes grounds to deny a motion to modify on either statutory ground. Regulations of Connecticut State Agencies, § 46b-215a-3-(b)(1)(A); Johnson v. Johnson, 185 Conn. 573, 576, 441 A.2d 578
(1981); Miller v. Miller, 181 Conn. 610, 611-12, 436 A.2d 279 (1980);Siracusa v. Siracusa, 30 Conn. App. 560, 566, 621 A.2d 309 (1993); Careyv. Carey, 29 Conn. App. 436, 440, 615 A.2d 516 (1992); Richard v.Richard, 23 Conn. App. 58, 63, 579 A.2d 110 (1990); Hart v. Hart,19 Conn. App. 91, 94, 561 A.2d 151 (1989); Hay v. Hay, 8 S.M.D. 51, 54 (1994); Campbell v. Scott, 7 S.M.D. 8, 12, 8 C.S.C.R. 507, 11 Conn.Fam.L.J. 71 (1993); Bardsley v. Bardsley, 6 S.M.D. 112, 116 (1992); Ouellette v.Ouellette, 6 S.M.D. 83, 85 (1992).
In Charette v. Charette, 19 Conn.L.Rptr. 187, 3 Conn.Ops. 579,1997 Ct. Sup. 3609 (Zarella, J., 1997), the court applied this law to the circumstances of an obligor incarcerated after conviction of criminal activity[4]: "The court finds that the decrease in the defendant's income has been occasioned by the defendant's own fault. His conduct in committing multiple assaults and burglary resulting in his arrest and conviction is inexcusable conduct. The defendant knew or should have known that his intentional acts would result in his incarceration and loss of income. . . ." Id, 1997 Ct. Sup. 3618 (citation omitted). Rejecting the holding in Bridgeforth, the court found that "its failure to order any support would work an injustice on the plaintiff not the defendant. The plaintiff will be forced to shoulder the entire burden of the cost of the child's upbringing. Funds that she could otherwise set aside for other purposes such as college education . . . will be diverted to pay for the defendant's share of the cost of rearing their child. In balancing the equities the court believes that an order of support which may not be reimbursed until sometime in the future — even after the child reaches majority — is preferable than no order at all." Id,1997 Ct. Sup. 3616.
In Crouse v. Crouse, 21 Conn.L.Rptr. 390, 1998 Ct. Sup. 1642
(Solomon, J., 1998) the court elected to follow Charette rather thanBridgeforth: "In a relatively recent Superior Court decision, the court conducted a thorough and thoughtful analysis of this issue and concluded that the obligor should not be relieved of his support obligation during the period of his incarceration. The court there considered, and rejected for reasons which this court finds to be sound, the various rationales CT Page 7474 upon which child support obligors have been granted relief as a result of incarceration. Although not bound by the decision of a coordinate court, this Court is persuaded by the sound reasoning in Charette that individuals such as the defendant not be relieved of their child support obligation when, through their own misconduct, they are incarcerated."Crouse v. Crouse, 1998 Ct. Sup. 1643-44.
Prior to the Charette and Crouse cases some other courts declined to provide relief for incarcerated obligors. Deal v. Deal, Superior Court, Judicial District of Middlesex at Middletown, doc. no. 73317,1996 Ct. Sup. 327 (Gordon, J., Jan. 2, 1996); O'Connell v. O'Connell,7 Conn.L.Rptr. 447, 7 C.S.C.R. 1175 (Axelrod, J., May 14, 1992); Moore v.Moore, 10 S.M.D. 197 (Trombley, F.S.M, Oct. 3, 1996); Fleming v.Raiford, 10 S.M.D. 80 (Sullivan, F.S.M, June 20, 1996); Collier v.Jennings, 1 S.M.D. 92, 3 C.S.C.R. 204 (Lifshitz, F.S.M, Dec. 30, 1987).
Subsequently, in Scapin v. Scapin, 11 S.M.D. 171, 20 Conn.L.Rptr. 348, 3 Conn.Ops. 1039, 1997 Ct. Sup. 9530 (Lifshitz, F.S.M, 1997), the undersigned also followed the Charette decision, abandoning its previous propensity to follow the Bridgeforth rule. "[I]n the absence of an authoritative decision by the Appellate Court or the Supreme Court, this court finds it appropriate to follow its own analysis and conscience. In particular, the court finds the analysis of Judge Zarella in Charette v.Charette and Family Support Magistrate Sullivan in Fleming v. Raiford to be both the most recent and the most persuasive Connecticut Law on the issue." Scapin v. Scapin, supra, 11 S.M.D. 175. Since then all of the decisions in Connecticut have been consistent with Charette and have abandoned Bridgeforth. Shepaum v. Hernandez, 14. S.M.D. 374 (Bentivegna,F.S.M, Nov. 20, 2000); Suarez v. Carmona, 14 S.M.D. 414 (Bentivegna,F.S.M, Nov. 28, 2000); McBride v. Singleton, 13 S.M.D. 267,2000 Ct. Sup. 693
(Lifshitz, F.S.M, Dec. 25, 1999); Morton v. Morton, Superior Court, judicial district of Tolland at Rockville, Docket No. 67544 (Zarella,J., April 7, 1999); Graham v. Graham, 12 S.M.D. 172 (Nov. 19, 1998,Sosnoff, F.S.M.), Carrero v. Gonzalez, 11 S.M.D. 177 (Lifshitz, F.S.M, August 3, 1997).
A significant segment of the law upon which Bridgeforth is based is no longer valid. In fact, four of the eight out-of-state cases cited in are no longer prevailing law in their respective states. The reviewing court in Bridgeforth relied heavily on Foster v. Foster, 99 App.Div.2d 284,471 N.Y.S.2d 867 (1984) and Matter of Marriage of Edmonds, 53 Or. App. 539,633 P.2d 4, 5 (1981) in deciding that "any obligation for support or for arrearage is suspended nunc pro tunc from the date of incarceration to the date of the defendant's release. . . ." Yrayta v. Bridgeforth, sub nom. Commissioner of Human Resources v. Bridgeforth, supra,42 Conn. Sup. 129. CT Page 7475
Foster v. Foster no longer appears to be controlling law in New York, although it has not been expressly overruled. In three more recent decisions, Knights v. Knights, 71 N.Y.2d 865, 522 N.E.2d 1045,527 N.Y.S.2d 748 (1988), Frasca v. Frasca,213 App.Div.2d 589,624 N.Y.S.2d 259 (1995), and Romanous v. Romanous,181 App.Div.2d 872,581 N.Y.S.2d 410 (1992) appellate level New York courts have ruled that an obligor's incarceration is a self-created hardship and that his or her child support obligation should not be suspended during incarceration.
Furthermore, the then leading Oregon case Matter of Marriage ofEdmonds, 53 Or. App. 539, 633 P.2d 4, 5 (1981) was overruled by Matter ofMarriage of Willis, 109 Or. App. 584, 820 P.2d 858 (1991) which in turn was reversed on appeal. Matter of Marriage of Willis, 314 Or. 566,840 P.2d 697 (1992)[5].
Similarly, Clemans v. Collins, 679 P.2d 1041 (Alaska 1984) has been superseded. Alaska Civil Rule 90.3 provides that all obligor parents must pay a minimum child support order of at least $50.00 per month. This rule was incorporated into the state's child support guidelines. Alaska Admin. Code tit. 15 § 125.010. Thereafter, Smith v. Alaska Departmentof Revenue, 790 P.2d 1352 (Alaska 1990) and Douglas v. Alaska Departmentof Revenue, 880 P.2d 113 (Alaska 1994), cert. denied, 514 U.S. 1112,115 S.Ct. 1968, 131 L.Ed.2d 857 (1995) confirmed that that an incarcerated obligor's child support obligation should be at least the minimum obligation set by the state's child support guidelines. More recently the Alaska Supreme Court reaffirmed this rule in Bendixen v. Bendixen,962 P.2d 170 (Alaska 1998) although it did reverse the lower court's summary denial of the incarcerated obligor's motion to modify his $1,075.90 per month order. The case was remanded to the trial court with direction to conduct a "case-specific" consideration of the circumstances. The language of the court suggests that it rejects "equating incarceration to voluntary unemployment" while yet imposing at least the minimum order. Id., 173.
The leading case cited in Bridgeforth opposing relief for incarcerated obligors was the Nebraska Supreme Court decision Ohler v. Ohler,220 Neb. 272, 369 N.W.2d 615 (1985). Recently, however, the same court reversed a lower court which, relying on Ohler, based its child support order on the incarcerated obligor's earning capacity before he committed the crime. The court decided that the Nebraska Child Support Guidelines provided for a minimum support order of $50.00 per month and to exceed that amount based on earning capacity "there must be some evidence that the parent is capable of realizing such capacity through reasonable effort." State v. Porter, 259 Neb. 366, 610 N.W.2d 23 (2000). CT Page 7476
Several of the previously cited Connecticut cases, including Gueitsv. Correa, Charette v. Charette, Fleming v. Raiford, Laubenheimer v.Laubenheimer, and Scapin contain string citations and case analysis of the law on the issue in sister states throughout the country. The previously mentioned A.L.R. article contains a thorough and useful analysis as it existed into the early `90's. F.Wozniak, Annot., "Loss of Income Due to Incarceration as Affecting Child Support Obligation" 27 A.L.R.5th 540-592 (1995).
An updating article, K.R. Cavanaugh and D. Pollack, "Child Support Obligations of Incarcerated Parents", 7 Cornell J.L. Pub. Pol'y 531 (1998), concludes that there is no cohesive policy on the issue and argues that "when balancing the rights of convicted criminals against children who require support regardless of parental circumstances, the welfare of children must take precedence." Id., 533. The article includes a perceptive analysis of many cases from around the country including cases subsequent to the publication of the Wozniak article. It is emblematic of the volatility of this issue, however, that courts and States continue to switch sides on the issue. Additional States have also weighed in.
The issue remains volatile in many states. The discussion above notes that courts in Alaska, Nebraska and Oregon have swung to and fro. In New Jersey, the Superior Court and its Appellate Division remain split with such cases as Kuron v. Hamilton, 331 N.J. Super. 561, 752 A.2d 752
(App.Div. 2000) and Bergen County Board of Services v. Steinhauer,294 N.J. Super. 507, 683 A.2d 856 (Chancery Div. 1996) inclined to grant relief, especially where incarceration exceeds one year[6], while other courts holding commission of a crime to be voluntary conduct hence requiring arrearages to continue to accrue, Halliwell v. Halliwell, 326. N.J. Super. 442, 741 A.2d 638 (App.Div. 1999); Topham-Rapanotti v.Guilli, 289 N.J. Super. 626, 674 A.2d 650 (Chancery Div. 1996).
Ohio has previously been reported as conflicted on the issue. ContrastPeters v. Peters, 69 Ohio App.3d 275, 277, 590 N.E.2d 777 (1990) withCole v. Cole, 70 Ohio App.3d 188, 590 N.E.2d 862 (1990). More recently, Ohio seems to be shifting toward the position of denying relief from support obligations by reason of incarceration. In Richardson v.Ballard, 113 Ohio App.3d 552, 555, 681 N.E.2d 507 (1996) the court stated: "Children should not be made to suffer financial hardship because of their parent's wrongdoing." Declaring that it had "reconsidered the implications of our decision in Peters" the court "now agree[s] with the reasoning of other Ohio courts which have found incarceration due to criminal conduct to be voluntary." The court quoted favorably an unreported decision: "A parent cannot, by intentional conduct or mere irresponsibility, seek relief from this duty of support. Defendant, who CT Page 7477 by his own wrongful conduct placed himself in a position that he is no longer available for gainful employment, is not entitled to relief from his obligation to support his child. Incarceration was a foreseeable result of his criminal conduct and is thus deemed a voluntary act in and of itself." Id, 554, citing Williams v. Williams, Franklin App. No. 92AP-438, 1992 WL 246020 (unreported, Sept. 24, 1992). See alsoBrockmeier v. Brockmeier, 91 Ohio App.3d 689, 633 N.E.2d 584 (1993);Mannasmith v. Mannasmith, Marion App. No. 9-90-44, 1991 WL 217317 (unreported, July 26, 1991).
In Iowa, a recent case followed previous holding in In re Vetternack,334 N.W.2d 761 (Iowa 1983) that incarceration for criminal activity is considered voluntary for purposes of determining child support. However, the court overruled the subsequent case In re Phillips, 493 N.W.2d 872
(Iowa App. 1992), ruling that In re Vetternack required some examination of the incarcerated obligor's ability to pay. In re Walters,575 N.W.2d 739, 743 (Iowa 1998). Walters arose after the imprisoned obligor finished his sentence and was released. The court determined that because his post-release earnings were substantially less than prior to his arrest and there was no evidence that as a convicted felon he could reasonably aspire to his previous income level, he had proven a substantial permanent change in circumstances and was entitled to downward modification. Interestingly, after stating that it was overruling Phillips, the court concluded "based on our holding inVetternack that [the obligor] should be held responsible for his support obligation during the period of his incarceration." Although this result was apparently because the obligor had some assets when he commenced incarceration, the court stated that it was unclear how much of those assets had been used to pay down his support arrearage or how much had been dissipated. Nonetheless the court directed that the unpaid support accrue based on the original support order until the date of his release. Id.
A thorough recent analysis of the issue was conducted by the Kansas Supreme Court in In re Marriage of Thurmond, 265 Kan. 715, 962 P.2d 1064
(1998). In considering sister state cases, the court organized them into three categories: those where incarceration of the obligor is held to be (1) no justification, (2) complete justification or (3) one factor to consider. After analysis of cases in each category, the court adopted the "no justification rule" for Kansas. The court concluded that as a matter of law "incarceration alone is not a change of circumstances which can justify suspension or modification of the child support obligation."
The neighboring state of Oklahoma came to a similar result. Its Supreme Court held that an incarcerated obligor continues to have a duty to support his children and that in the absence of other evidence of income CT Page 7478 it was proper for the trial court to impute income based on the minimum wage for a 40 hour work week. It is also noteworthy that this case, like the present case, involved establishment of an initial support order rather than modification of an existing order. "Although most of the cases seem to concern the issue of whether a pre-existing child support order should be modified downward due to the parent's incarceration, rather than with the exact issue before us, to wit: how should a parent's incarceration effect an initial setting of the support obligation, we deem the principles enunciated therein helpful in analyzing the present situation." Jones v. Baggett, 1999 OK 68, 990 P.2d 235, 245 (1999).
Texas has codified that where evidence is insufficient to establish the obligor's resources, there is a presumption "that the party has wages or salary equal to the federal minimum wage for a 40-hour week. . . ." Tex. Fam. Code Ann. § 154.068 Fam. (Vernon 1996). Its Court of Appeals affirmed a trial court's support order of $168 per month child support payable by the incarcerated husband in a divorce decree. Reyesv. Reyes, 946 S.W.2d 627 (Tex.App.-Waco 1997).
In Reid v. Reid, 57 Ark. App. 289, 944 S.W.2d 559 (1997) the court denied a request to suspend a $200 biweekly support order for two children on grounds of unclean hands. "We agree that equity will not come to the aid of one who of his or her own volition engages in criminal behavior and suffers the consequences which affect the ability to pay child support. Moreover, the needs of the children have remained unchanged, and as between appellant and his children, the interest of the children must prevail. We can think of no reason how their best interests are served by depriving them of support. . . ." Id, 294.
The following additional cases[7], most of which have been discussed in Scapin, supra, generally deny relief to the incarcerated obligor or require some continued child support payments: In re Marriage ofHamilton, 857 P.2d 542 (Colo.App. 1993); Division of Child SupportEnforcement v. Barrows, 570 A.2d 1180 (Del. 1990); Held v. Held,617 So.2d 358 (Fla.App. 1993); Ross v. Ross, 581 N.E.2d 982 (Ind.App. 1991); Davis v. Vance, 574 N.E.2d 330 (Ind.App. 1991); Redmon v.Redmon, 823 S.W.2d 463 (Ky.App. 1992); State v. Nelson, 587 So.2d 176
(La.App. 1991); Alexander v. Alexander, 417 So.2d 92 (La.App. 1982);Hebert v. Hebert, 475 A.2d 422 (Me. 1984) ("no abuse of discretion" in a divorce decree in which the trial court established a $200.00 per week support order for four remaining minor children where the obligor was incarcerated after he was convicted of sexually assaulting his 16-year-old daughter); Oberg v. Oberg, 869 S.W.2d 235 (Mo.App.W.Dist. 1993); Mooneyv. Brennan, 257 Mont. 197, 848 P.2d 1020, 1023 (1993); Noddin v. Noddin,123 N.H. 73, 455 A.2d 1051 (1983); Thomasson v. Johnson, 102 N.M. 512,903 P.2d 254 (1995); Koch v. Williams, 456 N.W.2d 299 (N.D. 1990); CT Page 7479Procter v. Procter, 773 P.2d 1389 (Utah App. 1989); Parker v. Parker,152 Wis.2d 1, 447 N.W.2d 64 (1989); Glenn v. Glenn, 848 P.2d 819 (Wyo. 1993).
Decisions in several other states join those that would relieve an incarcerated obligor of all or most of his support obligation. Although Arizona has a statutory provision similar to Texas which allows the court to attribute income of at least minimum wage to an obligor, Ariz.Rev.Stat.Ann. § 25-320(I), its courts have determined that the support order should be based on the obligor's "actual earning capacity while imprisoned . . . including the opportunity for prison income Stateof Arizona ex rel. Department of Economic Security v. McEvoy,191 Ariz. 350, 354, 955 P.2d 988 (App. 1998); State of Arizona ex rel.Department of Economic Security v. Ayala, 185 Ariz. 314, 317, 916 P.2d 504
(App. 1996).
The only California case on the issue is not definitive, but strongly suggests that absent evidence of substantial assets or actual employment or income opportunities which incarcerated, a substantial reduction in the support order is required. State of Oregon v. Vargas, 70 Cal.App.4th
1128, 83 Cal.Rptr.2d 229 (1999)[8]. Virginia seems headed in the same direction. Donnell v. Donnell, 20 Va. App. 37, 455 S.E.2d 256 (1995).
Previously reported cases which appear to allow relief for incarcerated obligors include: Lewis v. Lewis, 637 A.2d 70 (D.C.Ct.App. 1994); Nab v.Nab, 114 Ida. 512, 757 P.2d 1231 (1988); People ex rel. Meyer v. Nein,209 Ill. App.3d 1087, 154 Ill.Dec. 436, 568 N.E.2d 431 (1991); Wills v.Jones, 340 Md. 480, 667 A.2d 331 (1995)[9]; Pierce v. Pierce,162 Mich. App. 367, 412 N.W.2d 291 (1987); Franzen v. Borders,521 N.W.2d 626 (Minn.App. 1994); Kuronen v. Kuronen, 499 N.W.2d 51
(Minn.App. 1993); Johnson v. O'Neill, 461 N.W.2d 507 (Minn.App. 1990);Leasure v. Leasure, 378 Pa. Super. 613, 549 A.2d 225 (1988); Voecks v.Voecks, 491 N.W.2d 107 (Wis.Ct.App. 1992); Matter of Marriage ofBlickenstaff, 71 Wash. App. 489, 859 P.2d 646 (1993).
After a thorough review of the Connecticut and sister state case law, this court is unpersuaded that there is cause to depart from our recent cases holding the incarcerated obligor liable for continuing support and regarding any impediment to his earnings as a self-imposed hardship. Nor is the court convinced that any distinction occurs between establishment of new orders and modification of existing orders[10] Moreover the fact that the present defendant was incarcerated prior to the birth of the child does not change the result. In some states, a voluntarily reduced income may serve as a basis for determining the support order unless the voluntary reduction was for the specific purpose of reducing liability for child support. This has never been the law in Connecticut. CT Page 7480
It will be necessary to conduct and evidentiary hearing to determine the defendant's earning capacity so that a support order can be set and arrearages determined. To that end the case is continued to Tuesday, July 17, 2001. The State is directed to apply for a Writ of Habeas Corpus to secure the defendant's presence in court for the hearing.
BY THE COURT
Harris T. Lifshitz Family Support Magistrate