In the Matter of the Marriage of

Debbie Jane WILLIS,
*Petitioner,*

*and*

Jerry Don WILLIS,
*Respondent.*

STATE ex rel Debbie Jane WILLIS,
*Appellant,*

*v.*

Jerry Don WILLIS,
*Respondent.*

(86P-2328; CA A66506)

820 P2d 858

Michael Ross, Deputy District Attorney, Dallas, argued the cause for appellant. With him on the brief was Fred E. Avera, District Attorney, Dallas.

Lynda A. Golar, Salem, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

ROSSMAN, J.

Buttler, P. J., dissenting.

## ROSSMAN, J.

Mother appeals a trial court order suspending father's child support obligation until 60 days after his release from prison on a sentence for possession of a controlled substance, because he had insufficient income and assets to make the payments. On *de novo* review, we reverse.

In *Edmonds and Edmonds,* 53 Or App 539, 542, 633 P2d 4 (1981), we held that, when a noncustodial parent is imprisoned for a crime other than nonsupport or criminal contempt for failure to pay support, the parent is not liable for child support payments while incarcerated, unless it is affirmatively shown that he or she had income or assets to make such payments. Father testified that, before his arrest, over $14,000 in property had been stolen from him and that he was indigent when he went to prison. Although the trial court's order provided for reinstatement of the obligation if any of father's stolen property was recovered, there is no evidence that any property was recovered or that his indigent status had changed during his imprisonment.[1] Mother argues that, in holding that a parent may avoid a child support obligation by going to prison, the rule in *Edmonds* is in conflict with other well-established principles of domestic relations law and should now be abandoned. We agree and, accordingly, we overrule *Edmonds.*

■ Decisions prior to *Edmonds* used the equitable "unclean hands" doctrine to bar a parent's claim for modification of child support. The law is well-settled that, if an obligor, acting in bad faith, voluntarily worsens his financial position so that he cannot meet his obligations, he cannot obtain a modification of support. *Nelson v. Nelson,* 225 Or 257, 260, 357 P2d 536 (1960); *Jones and Jones,* 106 Or App 264, 267, 806 P2d 1170 (1991). "Bad faith" has generally been defined as an obligor's action to reduce income or assets for the purpose of "jeopardizing the interests of his children." *Nelson v. Nelson, supra,* 225 Or at 261. However, *Edmonds* rejected the use of the "unclean hands" doctrine in the case of

---

[1] Mother argues that the trial court erred in suspending father's child support obligation, because the state affirmatively established that father had adequate resources to meet the debt during his incarceration. Based on our *de novo* review, we find that the evidence does not support that contention. Accordingly, it does not require further discussion.

an incarcerated parent. We said:

> "Granted that father's own misconduct has resulted in his imprisonment, this is not a proper case for the application of [the unclean hands] doctrine in the absence of some showing that he became imprisoned in order to avoid his support obligation." 53 Or App at 542.

Then, citing *Thompson and Thompson,* 25 Or App 421, 549 P2d 683 (1976), we reasoned that an obligor "should not be denied relief under the [un]clean hands doctrine if the court is satisfied that there is a valid excuse for not meeting the required payments." 53 Or App at 543.

■ Criminal conduct of any nature cannot excuse the obligation to pay support. We see no reason to offer criminals a reprieve from their child support obligations when we would not do the same for an obligor who voluntarily walks away from his job. Unlike the obligor who is unemployed or faced with a reduction in pay through no fault of his own, the incarcerated person has control over his actions and should be held to the consequences. Under *Edmonds,* a man who had committed a crime against his children and was sent off to prison would be relieved of his support obligation. Such inequitable results must be avoided.

■■ A person who has a support obligation should not profit from his criminal conduct, particularly at his children's expense. We recognize that an individual in father's situation – assuming that he is genuinely indigent and unable to pay – cannot be found in contempt for not paying support while incarcerated. However, this is not a contempt proceeding; it is simply a modification proceeding. Father should not be able to escape his financial obligation to his children simply because his misdeeds have placed him behind bars. The meter should continue to run. Accordingly, we hold that father's support obligation continues to accrue during his incarceration.[2]

---

[2] Mother also argues that, under the Uniform Child Support Guidelines, ORS 25.270 to ORS 25.285, father has failed to show that the application of the formula to determine the correct amount of child support is "unjust or inappropriate in the particular case." ORS 25.270(2). However, the application of the guidelines does not arise unless the party requesting a modification of support first establishes a substantial change in circumstances. ORS 107.135(2)(a); *Gay and Gay,* 108 Or App 121, 124, 814 P2d 543 (1991). Because we hold that father's incarceration did not constitute a substantial change in circumstances to justify suspension of child support, mother's additional argument based on the guidelines is irrelevant.

Reversed. Costs to mother.

**BUTTLER, P. J.,** dissenting.

Because I perceive no compelling reason to overrule *Edmonds and Edmonds,* 53 Or App 539, 633 P2d 4 (1981), I dissent. Although that case was decided more than 10 years ago, neither the Oregon Supreme Court nor the Legislative Assembly has repudiated it.

The majority would resurrect the application of the unclean hands doctrine to an incarcerated parent, which we expressly rejected in *Edmonds,* "in the absence of some showing that he became imprisoned in order to avoid his support obligation." 53 Or App at 542. The majority appears to say that a father who is imprisoned for having committed a crime is in the same position as one who voluntarily walks away from his job. However, there is a difference, as *Edmonds* points out, unless he deliberately becomes imprisoned in order to avoid paying support. There is nothing to suggest that that is the case here.

Accordingly, I dissent.