Charles R. REDMON, Appellant,

v.

Charlene REDMON, Appellee.

No. 91-CA-328-S.

Court of Appeals of Kentucky.

Jan. 24, 1992.

G. Scott Staples, Versailles, for appellant.

Michael L. Judy and Richard M. Guarnieri Stoll, Keenon & Park, Frankfort, for appellee.

Before HOWERTON, HUDDLESTON and McDONALD, JJ.

McDONALD, Judge.

Charles and Charlene Redmon were married in 1976 and divorced in 1989. Two children, now ages 6 and 10, were born during their marriage. At the time Charlene filed a petition for legal separation, Charles was employed as the Chief of Police of Woodford County. In his response seeking a dissolution, filed January 17, 1989, Charles asserted he was unemployed. Nevertheless, at the hearing on the petition in July, Charles was self-employed, and at that time he entered into a property settlement agreement in which he agreed to pay child support in the sum of $550 per month and to pay an additional $113.84 for medical insurance for the children. The agreement was incorporated into the decree of dissolution entered July 31, 1989, having been found by the trial court to be fair and conscionable.

A year later Charles moved for a reduction in child support. In his motion he stated he had pled guilty to criminal charges in federal court and, because he was incarcerated in a federal correctional facility in Atlanta, Georgia, he had no income. His motion did not specify what crime he had committed or how long a sentence he would be required to serve. He wanted his support obligation reduced to nothing. There was no evidentiary hearing conducted in this matter; however, pleadings in the record indicate that Charles had participated in one or more bank robberies, that these crimes had been committed before his execution of the property settlement agreement, and that he would be in prison for at least four years.

The commissioner recommended that child support be modified utilizing an imputed income of $4 per hour, or $688 gross monthly income. Both parties took exceptions to the recommendation. Because it was undisputed that Charles earned only $5 per month in prison, he insisted he should pay no support according to the child support guidelines. Charlene argued that Charles was estopped from raising his incarceration as a defense to his obligation to pay child support, as Charles was aware of the possibility of his imprisonment at the time he entered into the property settlement agreement.

The trial court determined that despite Charles' total lack of income, modification was not appropriate. It concluded that Charles' incarceration could not "be considered to be involuntary" as it was "caused by his own conscious act," therefore precluding any basis to modify the agreed amount of child support. The trial court was not unaware of the reality of Charles' situation and further provided that, upon his return to society, consideration would be given to Charles' ability to pay the arrearages accumulated during his incarceration.

In his appeal to this Court, Charles insists the trial court erred in failing to utilize the child support guidelines set out in KRS 403.212(6) which, considering his current lack of income, would mandate a total elimination of any support obligation. He criticizes the court for failing to make findings in support of its deviation from the guidelines as required by KRS 403.211(2). This statute reads:

(2) At the time of initial establishment of a child support order, whether temporary or permanent, or in any proceeding to modify a support order, the child support guidelines in KRS 403.212 shall serve as a rebuttable presumption for the establishment or modification of the amount of child support. Courts may

deviate from the guidelines where their application would be unjust or inappropriate. Any deviation shall be accompanied by a written finding or specific finding on the record by the court, specifying the reason for the deviation.

■ The appellant's argument that the trial court did not comply with the requirement to explain in detail its deviation from the guidelines is specious. The trial court was clear in its judgment that application of the guidelines was inappropriate because Charles had voluntarily committed criminal acts resulting in his confinement and the concomitant loss of income. KRS 403.211(3)[1] lists the criteria a trial court should utilize in its determination of whether the application of the guidelines "would be unjust or inappropriate." Subsection (g) of that statute allows deviation for "[a]ny similar factor of an extraordinary nature specifically identified by the court...." KRS 403.211(4) further provides that the circumstances considered as "extraordinary ... shall be determined by the court in its discretion." Clearly the guidelines are not designed to cover all the possible scenarios in which divorcing parents find themselves, and the legislature has not taken away the trial court's broad discretion in ensuring that the needs of their children will continue to be met.

■ Although the trial court mentioned the concept of voluntary unemployment as contemplated in KRS 403.212(2)(d),[2] the underpinning of its judgment is simply that the guidelines are inappropriate under the undisputed factual circumstances of this case. We are in complete agreement with the holding in *McKinney v. McKinney,* Ky. App., 813 S.W.2d 828, 829 (1991), that the statutory provision for imputing income to one unemployed or underemployed can only be utilized, "when one purposely terminate[s] his employment or changes to employment with lower pay with an intent to interfere with his support obligation." There is, we agree, no evidence, or even a hint, that Charles committed the crimes for which he is serving time to avoid his child support obligation, although he certainly must have realized his conduct was inimical to the interest of his children. As stated before, however, while the commissioner did rely on KRS 403.212(2)(d) in recommending that the appellant's support obligation be reduced, the trial court did not utilize this statute to support its decision. The trial court declined to use the guidelines finding them inappropriate as a matter of law.

This issue was recently considered by the Court of Appeals of Oregon which reversed a decision of the trial court suspending a father's child support obligation until 60 days after his release from prison. The Oregon court, as the appellant has informed us, had previously held in *Edmonds v. Edmonds,* 53 Or.App. 539, 542, 633 P.2d 4 (1981), that a parent in prison

---

**1.** The complete list includes the following criteria:

   (a) A child's extraordinary medical or dental needs;

   (b) A child's extraordinary educational, job training, or special needs;

   (c) Either parent's own extraordinary needs, such as medical expenses;

   (d) The independent financial resources, if any, of the child or children;

   (e) Combined parental income in excess of the Kentucky child support guidelines;

   (f) The parents of the child, having demonstrated knowledge of the amount of child support established by the Kentucky child support guidelines, have agreed to child support different from the guideline amount. However, no such agreement shall be the basis of any deviation if public assistance is being paid on behalf of a child under the provisions of Part D of Title IV of the federal Social Security Act; and

   (g) Any similar factor of an extraordinary nature specifically identified by the court which would make application of the guidelines inappropriate.

**2.** KRS 403.212(2)(d) concerning the concept of imputed incomes provides:

   (d) If a parent is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income, except that a determination of potential income shall not be made for a parent who is physically or mentally incapacitated or is caring for a very young child, age three (3) or younger, for whom the parents owe a joint legal responsibility. Potential income shall be determined based upon employment potential and probable earnings level based on the obligor's recent work history, occupational qualifications, and prevailing job opportunities and earnings levels in the community.

for a crime was not liable for child support payments while incarcerated "in the absence of some showing that he became imprisoned in order to avoid his support obligation." However, in *Willis v. Willis*, 109 Or.App. 584, 820 P.2d 858 (1991), that court reasoned as follows in overruling the *Edmonds* decision:

> Criminal conduct of any nature cannot excuse the obligation to pay support. We see no reason to offer criminals a reprieve from their child support obligations when we would not do the same for an obligor who voluntarily walks away from his job. Unlike the obligor who is unemployed or faced with a reduction in pay through no fault of his own, the incarcerated person has control over his actions and should be held to the consequences.... A person who has a support obligation should not profit from his criminal conduct, particularly at his children's expense. We recognize that an individual in father's situation—assuming that he is genuinely indigent and unable to pay—cannot be found in contempt for not paying support while incarcerated. However, this is not a contempt proceeding; it is simply a modification proceeding. Father should not be able to escape his financial obligation to his children simply because his misdeeds have placed him behind bars. The meter should continue to run.

The appellee has cited additional foreign authority with similar holdings. *See, e.g., Division of Child Support Enforcement, ex. rel. Harper v. Barrows*, 570 A.2d 1180 (Del., 1990); *Parker v. Parker*, 152 Wis.2d 1, 447 N.W.2d 64 (1989); and *Proctor v. Proctor*, 773 P.2d 1389 (Utah App., 1989). *Contra, Leasure v. Leasure*, 378 Pa.Super. 613, 549 A.2d 225 (1988).

■ Additionally, we believe that the guidelines, which are exclusively tied to income, are not appropriate where the noncustodial parent has no income, but may have sufficient assets from which support can be obtained. In his motion to modify,

Charles did not claim to be indigent, nor did he state he had no property to satisfy the support obligation.[3] Despite the recent enactments concerning child support, our trial courts have retained broad powers to fashion a remedy that will best ensure that children of divorce are as minimally deprived as possible. Charles argued to the trial court that its refusal to eliminate his support obligation in its entirety amounted to additional punishment for the crimes he committed. While Charles' needs are all being met, however, his children have been required to endure their parents' divorce and his subsequent incarceration. They should not have to bear additional deprivation in the form of a reduced standard of living if the appellant has property, or potential sources of assets, which could be liquidated to satisfy any support delinquency or arrearage.

Accordingly, the judgment of the Woodford Circuit Court is affirmed.

All concur.

---

**3.** As there was no evidentiary hearing, the appellant's assets, or lack thereof, are not a matter of record.