**COMMONWEALTH of Kentucky, ex rel. Beverly J. MARSHALL, Appellant,**

v.

**Randall A. MARSHALL, Appellee.**

**No. 1998–CA–001781–MR.**

Court of Appeals of Kentucky.

March 24, 2000.

Amy C. Burke, Covington, for Appellant.

No brief filed, for Appellee.

Before: COMBS, JOHNSON, and McANULTY, Judges.

## OPINION

JOHNSON, Judge.

Beverly J. Marshall has appealed from the order of the Kenton Circuit Court abating the obligation of her former husband, Randall A. Marshall, to pay child support during his incarceration in federal prison. Believing that the trial court erred as a matter of law, we reverse.

Randall and Beverly were married on January 11, 1986. The parties had two children, Randall, Jr., born in June 1986, and Justin, born in March 1988. The Marshalls separated, and Beverly filed a petition for the dissolution of their marriage on April 6, 1990. Verified property and income schedules filed in that action indicate that the Marshalls did not own any realty and possessed few items of personalty. At the time of the dissolution, Beverly was not employed and Randall earned $13 per hour as a bricklayer. In the decree of dissolution, which was entered on July 22, 1991, Beverly was awarded custody of the two children and all the marital property, except a Ford van of undisclosed vintage. Randall was ordered to pay child support in the amount of $75 per week.

In April 1992, Randall moved the trial court for an order terminating his child support obligation for the reason that he had been sentenced to serve two years in the Kentucky State Reformatory after pleading guilty to the crime of wanton endangerment in the first degree. In its order of June 4, 1992, the trial court determined that Randall's incarceration was "an extraordinary circumstance as contemplated under K[entucky] R[evised] S[tatutes] 403.211."[1] The trial court relieved Randall of any obligation to pay child support for the time he was in prison and ordered that the obligation would resume immediately upon his release from the penal institution. The record reflects that Randall served a term of sixteen months in prison.

On June 19, 1995, Beverly sought to have Randall held in contempt for his "repeated and blatant violations" of the court's order that he pay child support. At that time, Randall was in arrears in the amount of $5,198.43.[2] Randall was found to be in contempt. The trial court's imposition of a 30-day jail sentence for that contempt was discharged for two years conditioned on Randall's payment of support of $100 per week, $75 as originally ordered, and an additional $25 to be applied to the arrearage.

On April 7, 1998, Randall again moved to abate his child support obligation. In his motion, he stated that he had been arrested the previous December and was currently being detained awaiting sentencing on federal felony charges. Randall further stated that he was "indigent," and that he had "no income, property or other assets" to satisfy his obligation. In the alternative, Randall asked that his support obligation be modified to the statutory minimum of $60 per month. Beverly objected to this motion and, relying on *Redmon v. Redmon*[3], argued that suspension of Randall's support was not warranted. In its order of July 2, 1998, the trial court granted Randall's motion to abate child support during his incarceration, concluding that the facts in this case were "distinguishable" from those in *Redmon*. It is from this order that Beverly has appealed.

Beverly contends the trial court erred in relieving Randall of his support obligation during his incarceration. She asks this Court to conclude, as a matter of law, that incarceration can never serve as the justi-

---

**1.** This statute provides in pertinent part that "the child support guidelines in KRS 403.212 shall serve as a rebuttable presumption for the establishment or modification of the amount of child support[,]" but that trial courts can deviate where their application would be "unjust or inappropriate."

**2.** This amount did not include any sums due during Randall's incarceration.

**3.** Ky.App., 823 S.W.2d 463 (1992).

fication to relieve a parent of his obligation to support his child regardless of any other factors, including the support obligor's indigence. Beverly argues that "[a]ccumulated child support arrear[ages] are but one more consequence of breaking the law[,]" and that a parent who is incarcerated "should suffer every consequence of his criminal act."

This jurisdiction previously addressed the issue of a parent's continuing obligation to pay child support during his incarceration in *Redmon, supra.* In that opinion, this Court borrowed extensively from the reasoning expressed in *Willis v. Willis,*[4] and affirmed the trial court's refusal to modify child support. However, in *Redmon* the obligor was not indigent, but instead had assets from which the child support could be satisfied. Under those circumstances, this Court held that "the guidelines, which are exclusively tied to income, are not appropriate where the noncustodial parent has no income, but may have sufficient assets from which support can be obtained."[5] Thus, while divorced parents generally are not required to consume their property to support their children, this Court held a parent's assets could be used in the event of incarceration so that the children would not "have to bear additional deprivation in the form of a reduced standard of living...."[6]

In the order appealed from, the Kenton Circuit Court determined that the facts in the case *sub judice* were significantly different from those in *Redmon.* When the parties' marriage was dissolved in 1991, the only property Randall owned was an old Ford van. The next year he began serving a sixteen-month prison sentence. From 1995 until his arrest in late 1997 Randall worked and paid child support, although the record indicates he had not made much of a dent in the $5,000 arrearage. Clearly, there is no dispute, and the record supports the trial court's finding, that Randall, unlike the appellant in *Redmon,* has no assets or other resources which could be consumed to benefit his children during his incarceration. The trial court is correct that the facts in *Redmon* are distinguishable and that *Redmon* does not restrict a trial court's ability to modify or abate the child support obligation of the indigent parent owing support. Thus, this Court must now determine whether the incarceration of a support obligor, who has neither income nor assets, may justify the trial court's modification or suspension of his support obligation while imprisoned.

Our research of the treatment of this issue in other jurisdictions reveals that the effect of incarceration on one's duty to pay court ordered child support has not been dealt with uniformly.[7] Some state courts have held as a matter of law that incarceration can never be a justification warranting the modification of child support.[8] The policy consideration most frequently artic-

---

4. 109 Or.App. 584, 820 P.2d 858 (1991), *rev'd* in *Willis v. Willis* 314 Or. 566, 840 P.2d 697 (1992). At the time *Redmon* was rendered by this Court, *Willis* had not been reversed by the Oregon Supreme Court.

5. *Redmon, supra* at 466.

6. *Id.*

7. *See Mascola v. Lusskin,* 727 So.2d 328 (Fla. Dist.Ct.App.1999); *In re Marriage of Thurmond,* 265 Kan. 715, 720–727, 962 P.2d 1064, 1068–1072 (1998) (surveying cases); *Halliwell v. Halliwell,* 326 N.J.Super. 442, 453–455, 741 A.2d 638, 644–646 (1999)(surveying cases).

8. *See e.g., Ohler v. Ohler,* 220 Neb. 272, 276, 369 N.W.2d 615, 618 (1985) ("one who seeks equity must come with clean hands" and "equity should not and will not act to give relief" to a person "found to have violated a criminal statute"); *Mooney v. Brennan,* 257 Mont. 197, 848 P.2d 1020 (Mont.1993) (court adopted reasoning in *Willis, supra,* at 109 Or.App. 587, 820 P.2d 858, that "[a] person who has a support obligation should not profit from his criminal conduct, particularly at his children's expense"); *Layman v. Layman,* 25 Va. App. 365, 488 S.E.2d 658, 659 (1997) (father's motion to modify characterized as an "attempt[ ] to shift to his wife and children the consequences of his wrongdoing").

ulated to deny modification in these cases is that equitable relief should not be available to one who voluntarily commits a crime, since incarceration and the concomitant loss of income, are foreseeable results of such activity. Other cases cite the no-justification rule as providing consistency in the manner in which support obligors are treated and avoiding "further strains on the custodial parents' finances and time." [9]

On the other hand, some courts have reasoned that incarceration is not a voluntary act and that the imprisoned, indigent child-support obligor should be relieved of the support obligation during incarceration.[10] The rationale underpinning this line of cases is that the child will not presently benefit from imposing upon his parent "a continuing support obligation, beyond his ability to pay," [11] and some courts have articulated the belief that, unlike the voluntarily unemployed parent, an incarcerated parent is truly not able to rectify his situation by obtaining employment. Other courts reason that the obli-

gor "will rarely be able to pay the arrears [upon release] and precious judicial resources and taxpayer funds will be expended in the attempt to collect." [12]

Finally, other states have taken the position that incarceration, standing alone, is neither a reason to modify nor a reason not to modify child support, but is only one factor for the trial court to consider in exercising its discretion when asked to modify or suspend support.[13]

■ There are few matters over which the trial court has more discretion than cases involving domestic relations issues. Even after the enactment of the Family Support Act in 1988, our statutory scheme for the establishment and modification of child support,[14] the trial court still retains considerable discretion.[15] However, that discretion is not unlimited.[16] Our Legislature has created general guidelines and presumptions, and the trial court may only deviate from these parameters if it gives appropriate written reasons. As long as the trial court's decision comports

---

9. *In re Marriage of Thurmond*, 265 Kan. at 728, 962 P.2d at 1073.

10. *See Nab v. Nab*, 114 Idaho 512, 519, 757 P.2d 1231, 1238 (1988) (incarceration "is not a voluntary or bad faith change in circumstances in the sense that the [obligor's] act is self-disabling"); *Johnson v. O'Neill*, 461 N.W.2d 507, 508 (Minn.App.1990) ("it would strain reason to believe, that O'Neill volitionally sought incarceration to avoid his child support" and to extend the doctrine of imputed income in such circumstances would "distort the doctrine and result in inappropriate and additional punishment"); *Leasure v. Leasure*, 378 Pa.Super. 613, 616, 549 A.2d 225, 227 (1988) ("[i]ncarceration is usually an involuntary situation" that requires indigent parent's support obligation to be suspended).

11. *Leasure*, 378 Pa.Super. at 617, 549 A.2d at 227.

12. *Halliwell*, 326 N.J.Super. at 452, 741 A.2d at 643 (citing *Bergen County v. Steinhauer*, 294 N.J.Super. 507, 517–18, 683 A.2d 856 (Ch.Div.1996)).

13. *See Oberg v. Oberg*, 869 S.W.2d 235, 238 (Mo.App.1993) (trial court should use discretion and in determining appropriate amount

of support consider such factors as "(1) the length of incarceration experienced for the current conviction and the anticipated remaining period of incarceration, (2) the earning potential of the incarcerated parent following release, (3) the amount of the existing child support award, and (4) the total amount of child support that will accumulate upon the incarcerated parent's discharge"); *Willis v. Willis*, 314 Or. 566, 840 P.2d 697, 699 (1992) (reversing *Willis v. Willis*, 109 Or.App. 584, 820 P.2d 858 (1991)) ("[w]here the action leading to the incarceration was not taken for the primary purpose of avoiding the support obligation," parent who demonstrated he has no source of income or assets was entitled to modification during period of incarceration); *Bendixen v. Bendixen*, 962 P.2d 170 (Alaska1998).

14. KRS 403.211—403.213.

15. *See e.g., Pegler v. Pegler*, Ky.App., 895 S.W.2d 580 (1995).

16. *Keplinger v. Keplinger*, Ky.App., 839 S.W.2d 566 (1992).

with the guidelines, or any deviation is adequately justified in writing, this Court will not disturb the trial court's ruling in this regard.[17] In our opinion, the characterization of incarceration as an "extraordinary" factor justifying not just deviation, but total suspension of all child support during the obligor's term of imprisonment, is such an abuse of discretion.

■ Moreover, the specific statute that provides for modification of an established support obligation, KRS 403.213(1), provides that the "provisions of any decree respecting child support may be modified only as to installments accruing subsequent to the filing of the motion for modification and only upon a showing of a material change in circumstances that is substantial and continuing." It must be implied from the trial court's order that Randall satisfied his burden of proof with respect to establishing a change in circumstances. However, it is our opinion that incarceration is simply not a change in circumstances contemplated by this statute. Our holding in this regard is the natural extension of *Redmon, supra,* which recites, approvingly, the broad language in *Willis v. Willis, supra,* that "[c]riminal conduct of any nature cannot excuse the obligation to pay support." [18] It is also consistent with the policy considerations expressed in other cases emanating from this Court.[19]

■ We align ourselves with those jurisdictions that equate incarceration with voluntary unemployment. It is axiomatic that a parent may not voluntarily impoverish himself in order to avoid his support obligations.[20] Although Randall did not file a brief in this Court, we would expect that if he had, he would argue that his status as a prison inmate was involuntary, and that there was no evidence that he committed any crime to avoid his support obligation. Nevertheless, it is apparent that he voluntarily engaged in conduct which he should have known would impair his ability to support his children. Indeed, Randall had previously been in prison which resulted in a sixteen-month hiatus of his legal obligation to support his two sons.

■ This Court was unable in *Redmon,* to resolve the issue with reference to KRS 403.212(2)(d), the statutory scheme for imputing income to voluntarily unemployed, or underemployed parents. At that time, the statute had been determined to apply only in cases where the trial court found the parent to have "purposely terminated his employment or change[d] to employment with lower pay with an intent to interfere with his [child] support obligations." [21] Given *McKinney's* imposition of a bad faith requirement, the Court in *Redmon* held that the guidelines were not applicable in the first instance, and that the trial court "retained broad powers to fashion a remedy" appropriate under the circumstances.[22] However, KRS 403.212(d), was amended in 1994, to eliminate the need of the trial court before imputing income to find that the parent acted in bad faith. This statutory change, coupled with the statute's exception for imputing income to two specific groups (that is, incapacitated parents and those caring for children three years of age and under) convince us that the Legislature did

---

17. *Bradley v. Bradley,* Ky., 473 S.W.2d 117, 118 (1971) (a judgment concerning child support will not be disturbed "unless there has been a clear and flagrant abuse of the powers vested in that court").

18. *Redmon, supra* at 466.

19. *See e.g., Downey v. Rogers,* Ky.App., 847 S.W.2d 63, 65 (1993) ("[s]upport of one's children is a fundamental commitment which takes precedence over debts to one's credi-

tors" and children should not have to "suffer the consequences of their parent's folly").

20. *Id.* (trial court abused its discretion in reducing child support because of increased consumer debt voluntarily undertaken by support obligor).

21. *McKinney v. McKinney,* Ky.App., 813 S.W.2d 828, 829 (1991).

22. *Redmon,* 823 S.W.2d at 466.

not intend to exempt incarcerated parents from those for whom income should be imputed for purposes of child support. Certainly, the Legislature is aware that incarcerated parents are no more able to obtain employment than parents of young children or mentally or physically disabled parents. Thus, the Legislature's refusal to include incarcerated parents among those identified as being excepted from imputed income convinces us that incarcerated parents are to be treated no differently than other voluntary unemployed, or underemployed parents owing support.[23]

Thus, we hold that the trial court erred in abating Randall's child support obligation, and accordingly, we reverse the judgment of the Kenton Circuit Court.

ALL CONCUR.

**23.** *See Louisville Water Co. v. Wells,* Ky.App., 664 S.W.2d 525, 527 (1984) (a "general rule of statutory construction is that the enumeration of particular things excludes other[s]" not "specifically mentioned").