RENDERED: NOVEMBER 6, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1518-MR

BRYAN W. DAVIS                                        APPELLANT

                 APPEAL FROM WARREN CIRCUIT COURT
v.                 HONORABLE DAVID A. LANPHEAR, JUDGE
                     ACTION NO. 06-J-00521

LORA L. BRADY, THROUGH THE
COMMONWEALTH OF KENTUCKY, CABINET FOR
HEALTH AND FAMILY SERVICES, ON BEHALF
OF THE MINOR CHILD                              APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, MAZE, AND MCNEILL, JUDGES.

MAZE, JUDGE: Appellant, Bryan W. Davis, *pro se*, appeals the Warren Circuit Court's order denying his motion to modify his child support obligation, which he argues should be reduced due to his incarceration. For the following reasons, we agree and, therefore, reverse and remand.

## BACKGROUND

Davis is the father of a minor child, born in 2004. In 2006, he was ordered to pay child support. In 2009, Davis was incarcerated on criminal charges and the court reduced his child support obligation to the statutory minimum of $60.00 per month. At that time, the court held that Davis's child support obligation would continue to accrue during his incarceration at the statutory minimum and, when released from prison, would resume at $150.00 per month.

In 2014, after Davis was conditionally released from prison, the Cabinet moved to modify Davis's child support obligation to $220.00 per month plus $37.50 per month in arrearage payments. Davis agreed to this modification, and the trial court entered an order to that effect.

Five years later, in June 2019, Davis filed a self-help motion to reduce his child support obligation because he was to be incarcerated for the next three years and would be unable to pay the current amount. On July 2, 2019, the trial court held a hearing on Davis's motion.[1] Both Davis and Lora Brady, the mother of the minor child, were present *pro se*. While Davis argued that his child support obligation should be reduced during his incarceration, Brady argued that their child

---

[1] The video record from the July 2, 2019 hearing was not made part of the record on appeal, so the Court did not have the opportunity to review that record, if it exists. However, neither side disputes the trial court's factual findings, so we accept them as undisputed. "It is incumbent upon Appellant to present the Court with a complete record for review. When the record is incomplete, this Court must assume that the omitted record supports the trial court." *Chestnut v. Commonwealth*, 250 S.W.3d 288, 303 (Ky. 2008) (citations omitted).

was doing without because of the circumstances that Davis brought on himself resulting in his incarceration.

After the hearing, in a September 17, 2019 order, the trial court denied Davis's motion to modify and made the following findings:

> Mr. Davis is an inmate in the Warren County Regional Jail, where he was booked on May 13, 2019. In 2009, Mr. Davis pled guilty to a felony sexual offense that required registration, and in 2017,[2] he was released on a five-year sex offender conditional discharge. Mr. Davis testified his conviction resulted from relations he had with an underage female. As a condition of release, Mr. Davis was not supposed to have contact with this female. Nevertheless, while on release, he pursued a relationship with the girl with whom he got in trouble in the first place. In other words, Mr. Davis had contact with the victim in his underlying felony case, who now, is not underage, and she may be pregnant with his child.
>
> Mr. Davis was on conditional discharge approximately two (2) years when he violated its terms by having contact with the victim; therefore, he has three years to serve for this violation. Mr. Davis advised he cannot obtain work release while in jail.

In its holding, the trial court recognized that Kentucky's legislature recently amended Kentucky Revised Statutes (KRS) 403.212(2)(d) to put an incarcerated parent in the same shoes as a parent who is "physically or mentally incapacitated" or "caring for a very young child[.]" Thus, the court acknowledged that it could

---

[2] Davis was released in 2014, but violated his parole in 2016 and was then released again in 2017.

not impute a "potential income" to Davis as an incarcerated parent. Nevertheless, the trial court denied Davis's motion to modify by finding that one of the criteria in KRS 403.211 applied, which made application of the child support guidelines "unjust or inappropriate." Specifically, the trial court held that "the circumstances in this case fit under subsection (g)" of KRS 403.211(3) and ordered that Davis's child support obligation should not change. This appeal followed.

## STANDARD OF REVIEW

The trial court enjoys broad discretion in modifying a parent's child support obligation. *Bell v. Bell*, 423 S.W.3d 219, 222 (Ky. 2014). Accordingly, we review the trial court's decision for an abuse of discretion. *Id.* "An abuse of discretion will only be found when a trial court's decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* (citation omitted). And, statutory interpretation is a question of law for the Court to review *de novo*. *Id*.

## ANALYSIS

As stated, Davis contends that the trial court abused its discretion in refusing to modify his child support obligation due to his incarceration. Specifically, Davis argues that he meets the statutory requirements to modify his child support and he is being discriminated against because of the nature of his crime. He alleges that he has always worked and paid his child support and, while

he would like to be providing for his child right now, he cannot.  So, he claims the court should have reduced his child support obligation during his incarceration.  Davis further argues that the court granted his motion to modify child support to $60.00 per month in 2009 and, thus, his 2019 motion should have been similarly granted.  Finally, he argues the trial court erred in applying KRS 403.211(3)(g) to deny his motion because his situation is not of an "extraordinary nature" to "make application of the guidelines inappropriate."

Given the recent amendment of KRS 403.212(2)(d) to provide an exception for incarcerated parents, resolution of this case requires analysis of the legislative intent behind KRS 403.212, as well as pre-existing Kentucky caselaw with respect to the effect of incarceration on a parent's child support obligation.  We begin with Kentucky's child support statutes.

The General Assembly established the child support guidelines and calculation tables by enacting KRS 403.212.  In relevant part, KRS 403.212 states:

> (2) For the purposes of the child support guidelines:
>
> (a) "Income" means actual gross income of the parent if employed to full capacity or potential income if unemployed or underemployed.
>
> . . . .
>
> (d) If a parent is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income, except that a determination of potential income shall not be made for a

parent who is incarcerated, physically or mentally incapacitated, or is caring for a very young child. . . .

(e) "Imputed child support obligation" means the amount of child support the parent would be required to pay from application of the child support guidelines.

As stated, this statute was amended, effective on June 27, 2019, to add the word "incarcerated" in subsection (2)(d). Based on this addition, an incarcerated parent cannot have a "potential income" imputed to them because they cannot be considered "voluntarily unemployed or underemployed."

Based on the child support statute in KRS 403.212, Davis has no "income" because he is not "employed to full capacity" under subsection (2)(a). And, Davis has no "potential income" because he cannot be considered "voluntarily unemployed or underemployed" under subsection (2)(d). Thus, Davis's child support obligation should be imputed to him under subsection (2)(e) based on an income of zero dollars while incarcerated at the Warren Regional County Jail. According to the child support guidelines and tables, an income of zero dollars equates to a child support obligation of $60.00 per month.

However, the trial court refused to modify Davis's obligation and kept it at its current level by finding that application of the child support guidelines would be "unjust or inappropriate" because one of the criteria in KRS 403.211 applied. We now examine that statute and the criteria contained therein.

In relevant part, KRS 403.211(2) states:

-6-

> . . . in any proceeding to modify a support order, the child support guidelines in KRS 403.212 shall serve as a rebuttable presumption for the establishment or modification of the amount of child support. Courts may deviate from the guidelines where their application would be unjust or inappropriate. Any deviation shall be accompanied by a written finding or specific finding on the record by the court, specifying the reason for the deviation.

Accordingly, the child support guidelines apply *unless* the court determines it would be "unjust or inappropriate" to apply them. If the court decides not to apply the guidelines, it must provide a written or specific finding for doing so and base its decision on one of seven criteria under KRS 403.211(3):

> (3) A written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case shall be sufficient to rebut the presumption and allow for an appropriate adjustment of the guideline award if based upon one (1) or more of the following criteria:
>
> (a) A child's extraordinary medical or dental needs;
>
> (b) A child's extraordinary educational, job training, or special needs;
>
> (c) Either parent's own extraordinary needs, such as medical expenses;
>
> (d) The independent financial resources, if any, of the child or children;
>
> (e) Combined monthly adjusted parental gross income in excess of the Kentucky child support guidelines;

(f) The parents of the child, having demonstrated knowledge of the amount of child support established by the Kentucky child support guidelines, have agreed to child support different from the guideline amount. . . . ; and

(g) Any similar factor of an extraordinary nature specifically identified by the court which would make application of the guidelines inappropriate.

In this case, the trial court refused to modify Davis's obligation and apply the guidelines to give him a statutory minimum obligation of $60.00 per month by finding criteria (g) applied. Criteria (g) appears to be a catch-all provision allowing the court to identify a factor of an "extraordinary" nature and then deviate from the guidelines at its discretion. *See* KRS 403.211(4) (stating that "extraordinary" "shall be determined by the court in its discretion"). Based on the recent addition of the word "incarcerated" to KRS 403.212(2)(d), we must determine whether this change affects the trial court's discretion to deviate from the child support guidelines when dealing with an incarcerated parent, like Davis.

When this Court engages in statutory interpretation, our main goal is "to give effect to the intent of the General Assembly." *Bell*, 423 S.W.3d at 223 (quoting *Shawnee Telecom Resources, Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011)). The clearest indicator of that intent is the "language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration." *Id.* (citation omitted). And "[w]here

-8-

the words used in a statute are clear and unambiguous and express the legislative intent, there is no room for construction and the statute must be accepted as written." *Id.* (quoting *Griffin v. City of Bowling Green*, 458 S.W.2d 456, 457 (Ky. 1970)).

Here, adding the word "incarcerated" to KRS 403.212(2)(d) is clear and unambiguous. The General Assembly chose to place an incarcerated parent in the same position as a parent who is "physically or mentally incapacitated" or "caring for a very young child" and not impute a potential income to those parents. Because the language is clear and unambiguous, we examine the intent of the General Assembly in adding the word "incarcerated" to KRS 403.212(2)(d). Although Kentucky's legislative history does not explain its intent, the federal legislative history for the child support guidelines is informative.[3]

On December 20, 2016, President Barack Obama issued an Executive Order to modify the guidelines for setting child support orders under the Child Support Enforcement Program. *See* Flexibility, Efficiency, and Modernization in Child Support Enforcement Programs, 81 Fed. Reg. 93,492, 93,497 (Dec. 20, 2016). Under this Executive Order, which was eventually codified in the federal

---

[3] Federal law outlines certain child support standards for the states to follow through the Child Support Enforcement program, which is a federal-state program (Title IV-D of the Social Security Act, P.L. 93-647), to help strengthen families by securing support for children from their noncustodial parent on a consistent and continuing basis.

regulations at 42 C.F.R. § 433 & 45 C.F.R. §§ 301-09, states are prohibited from

treating incarcerated parents as voluntarily unemployed when establishing or

modifying child support orders.  45 C.F.R. § 302.56(c)(3).  The reasoning behind

this Executive Order was explained in a 2019 law review article:

> The ultimate goal of President Obama's executive order is to "increase regular child support payments to families" by eliminating the daunting, unrealistic arrearages that loom over these parents.  Large child support arrearages result in lower employment and less support paid.  By providing incarcerated parents the ability to maintain manageable child support arrears, the executive order encourages continued payment of child support upon release from incarceration.  Not only does the order seek to encourage payment, but it is also expected to reduce prison populations and decrease the likelihood that noncustodial parents will go to jail for failure to make payments.
>
> Substantial accumulation of child support arrears discourages noncustodial parents from being present in their children's lives.  The presence of both parents is "emotionally, psychologically, and socially beneficial" to children.  Since it is generally fathers who are the noncustodial parents of their children, it stands to reason that fathers are generally the ones most susceptible to falling into massive child support debt and becoming unavailable to their children.  Children with present fathers experience better educational outcomes, more emotional security, better social connections, and more independence.  The executive order can help noncustodial fathers who have been released from incarceration attain these outcomes for children by removing the financial incentive for these fathers to disappear in fear that they will be arrested for nonpayment.

Cory Holifield Bennett, *Executive Order 13563 Creates Access to Affordable Child Support Orders for Incarcerated Parents*, 5 TEX. A&M J. PROP. L. 201, 221-22 (2019) (citations omitted).  In sum, the revised child support guidelines prohibit states from treating incarceration as voluntary to encourage payment of child support upon release and help the noncustodial parent stay present in their children's lives instead of disappearing in fear that they will be arrested for nonpayment or seeking underground, under-the-radar employment upon release.

In Kentucky, before the 2019 amendment to KRS 403.212(2)(d), our courts treated incarcerated parents as "voluntarily unemployed," which is exactly what the Executive Order now prohibits.  For instance, in *Commonwealth ex rel. Marshall v. Marshall*, 15 S.W.3d 396 (Ky. App. 2000), a father requested that his child support be abated or modified during his incarceration.  The Court discussed the divergence of opinions among jurisdictions regarding whether a parent's incarceration is a sufficient basis to modify child support.  While recognizing the economic reality that an incarcerated parent is unable to secure employment, the Court noted that, if support is abated or diminished, the child will suffer from not only the parent's physical separation, but a reduced standard of living.  *Id.* at 399-400.  Relying on *Redmon v. Redmon*, 823 S.W.2d 463 (Ky. App. 1992),

*superseded by statute*,[4] the Court held that incarceration alone is not a basis on which to modify a parent's child support obligation.

> Criminal conduct of any nature cannot excuse the obligation to pay support. We see no reason to offer criminals a reprieve from their child support obligations when we would not do the same for an obligor who voluntarily walks away from his job. Unlike the obligor who is unemployed or faced with a reduction in pay through no fault of his own, the incarcerated person has control over his actions and should be held to the consequences. . . . A person who has a support obligation should not profit from his criminal conduct, particularly at his children's expense. We recognize that an individual in father's situation—assuming that he is genuinely indigent and unable to pay—cannot be found in contempt for not paying support while incarcerated. However, this is not a contempt proceeding; it is simply a modification proceeding. Father should not be able to escape his financial obligation to his children simply because his misdeeds have placed him behind bars. The meter should continue to run.

*Redmon*, 823 S.W.2d at 466 (quoting *Willis v. Willis*, 820 P.2d 858 (Or. Ct. App. 1991), *reversed in Willis v. Willis*, 840 P.2d 697 (Or. 1992)).

Then, in the unpublished decision of *Herrell v. Commonwealth ex rel. Gray*, No. 2008-CA-001052-ME, 2009 WL 961134 (Ky. App. Apr. 10, 2009), this Court examined whether a parent's incarceration was a basis for modifying child support after the legislature amended KRS 403.212(2)(d) in 1994 to eliminate the

---

[4] In 1994, the legislature amended KRS 403.212(2)(d) to eliminate the requirement that a parent act in bad faith or, in other words, intend to avoid their support obligation through their unemployment, to be considered voluntarily unemployed.

bad-faith requirement.[5]  After discussing *Marshall*, *supra*, the Court held that "incarcerated parents are not among those excluded from [KRS 403.212(2)(d)'s] scope[.]"  *Id.* at *2.  So, the Court once again held that incarceration alone is not sufficient to support a motion for modification of child support.

Now, under the 2019 amendment of KRS 403.212(2)(d), incarcerated parents are among those specifically excluded from the statute's scope.  Thus, incarcerated parents are in the same position as a parent who is "physically or mentally incapacitated" or "caring for a very young child[.]"  KRS 403.212(2)(d).  As such, the trial court is not authorized to determine an incarcerated parent's potential income.  *See*, *e.g.*, *Jarboe v. Reynolds*, 541 S.W.3d 515, 516 (Ky. App. 2018) (holding a trial court is not authorized to determine a physically incapacitated parent's potential income pursuant to KRS 403.212(2)(d)).  The question then becomes, given the recent amendment, can the trial court use its discretion and refuse to modify a parent's child support obligation based on the parent's incarceration alone?

We conclude that the answer is no.  While a trial court may still exercise its discretion and refuse to modify an incarcerated parent's child support obligation, pursuant to KRS 403.211, the court must make a specific finding for doing so and that finding must fit one of the criteria outlined in KRS

---

[5] *See* footnote 4.

-13-

403.211(3)(a)-(g). Criminal conduct is not one of the criteria outlined in KRS 403.211(3).

Because the trial court found that "the circumstances in this case fit under subsection (g)," but offered no specific finding for why or how the circumstances of this case were "extraordinary" other than setting forth the nature of Davis's crime, we reverse. The criteria under KRS 403.211(3) envision a child with extraordinary medical needs, a child with extraordinary educational needs, or some other financial circumstance making application of the guidelines "unjust or inappropriate." None of those circumstances is present in this case and the trial court may not make this case fit within those criteria by simply stating that the catch-all provision of subsection (g) applies. Without setting forth a specific finding not based on Davis's criminal conduct, we conclude that the trial court abused its discretion in refusing to modify Davis's child support obligation.

On remand, the trial court must make specific findings to explain why application of the guidelines is "unjust or inappropriate" based on the criteria of KRS 403.211(3)(a)-(g). For instance, maybe the incarcerated parent has assets that will cover the current child support obligation during his incarceration, which would make application of the guidelines "unjust or inappropriate." Or, if the parent can earn income during his incarceration through a work release program that will cover the current child support obligation, then the court may refuse to

modify. Without a specific finding not based on a parent's criminal conduct and incarceration alone, however, the guidelines presumptively apply and the trial court must modify the child support obligation accordingly. To be clear, a parent's child support obligation is not suspended entirely while the parent is incarcerated. The obligation will continue during incarceration. Furthermore, the trial court may prospectively order that the child support obligation resume at the previous rate once the parent is released from prison.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's order denying Davis's motion to modify and remand for further specific findings. If the trial court cannot set forth specific findings that application of the child support guidelines would be unjust or inappropriate based on one or more of the criteria in KRS 403.211(3)(a)-(g), then the guidelines presumptively apply and Davis's child support obligation must be set at $60.00 per month for an imputed income of zero dollars during his incarceration.

ALL CONCUR.

BRIEF FOR APPELLANT:                NO BRIEF FOR APPELLEE

Bryan W. Davis, *pro se*
Bowling Green, Kentucky