Stephanie Kay **GOSSETT**, Appellant,

v.

Donald Steven **GOSSETT**, Appellee.

No. 1998–CA–001720–MR.

Court of Appeals of Kentucky.

Oct. 20, 2000.

William Thomas Klapheke, III Glasgow, KY, for Appellant.

Robert M. Alexander Glasgow, KY, for Appellee.

Before COMBS, JOHNSON and KNOPF, Judges.

## OPINION

JOHNSON, Judge.

Stephanie Kay Gossett has appealed from an order of the Barren Circuit Court entered on June 12, 1998, which concluded that Donald Steven Gossett is entitled to a reduction of his child support obligation as a matter of law. We vacate the order as entered and remand with directions that the trial court resolve the factual issues bearing on the issue of Donald's motion for a reduction in child support.

The Gossetts were married in 1984. The union produced two children: Whitney was born November 17, 1987; Derek was born January 13, 1995. The parties separated in late 1995, and their marriage was dissolved on August 12, 1996. The parties agreed on the resolution of all the issues arising from their twelve-year marital relationship with the exception of the appropriate amount of Donald's child support obligation. For a considerable period prior to the parties' separation, Donald worked full-time at R.R. Donnelley & Sons and he also worked part-time at a second job for Barren–Metcalfe Ambulance Service. Donald would not agree to pay child support calculated by using both of his incomes, and as a result the issue of the amount of his child support obligation was litigated before the domestic relations commissioner. On August 23, 1996, an order was entered setting child support at $200.13 per week ($867.24 monthly), which amount reflected Donald's total monthly income from both jobs of $3,555.

In April 1998, Donald moved for a reduction of his child support obligation. At the hearing conducted on May 11, 1998, Donald testified that his income had decreased over 40% since the 1996 hearing, to $2,121 per month. He attributed the decrease in his income to the fact that he had voluntarily quit his job with the ambulance service and because he was not working as much overtime as before at his primary job. He justified quitting his part-time job in order to have more time with his family, although he acknowledged, and the record clearly demonstrates, that he was not having regular visitation with his children.

In its order, the trial court found and concluded as follows:

1. The parties were divorced on or about August 13, 1996 in Barren Circuit Court. The parties have two children under the age of eighteen. At the time of the divorce [Donald] was employed at R.R. Donnelley & Sons, Co., and was working all the overtime that he could and was also working on a part-time basis with the Barren Metcalfe Ambulance Service and was also doing some other work of a self-employment nature.

2. [Donald's] income at the present time is $2,121.43 per month and his only source of income is through his employment at R.R. Donnelley & Sons, Co. This is full-time employment and [Donald] could not reasonably find work with greater income potential considering his education, work experience, and the community in which he lives. The Court finds that [Donald] is not required by law to maintain more than one job or to work to the exclusion of any other activities of life.

3. [Donald's] income is $2,121.43 per month. [Stephanie's] income is $1,278.71 per month. Statutory guidelines provide that child support should be set at $588.38 per month....

. . .

2. KRS [1] 403.212 provides "income" is actual gross income of a parent if employed to full capacity. This Court concludes that a full-time job at R.R. Donnelley and Sons, Co., constitutes full employment. The statutes do not require a person to work at a second job.

In this appeal, Stephanie argues that considering Donald's history of working at two jobs and all the overtime he could get to support his family, the trial court erred in failing to determine that he was voluntarily underemployed as contemplated by the statutes relating to child support for purposes of addressing his motion for modification. She further insists that the trial court abused its discretion in reducing Donald's support obligation where the evidence is uncontradicted that Donald willfully and voluntarily reduced his ability to earn income.

Donald argues that the trial court was "able to judge for itself [his] credibility and sincerity [ ], as well as the reasonableness of his actions, and found that [he] was not voluntarily underemployed." Elsewhere in his brief, Donald states that whether he is voluntarily underemployed is a "factual determination" which the trial court resolved in his favor.

 We agree that whether a child support obligor is voluntarily underemployed is a factual question for the trial court to resolve. Certainly, the findings of a trial court cannot be disturbed by this Court if they are supported by substantial evidence.[2] However, as we view the order from which this appeal has been taken, the trial court did not make a factual determination, but rather held, as a matter of law, that a child support obligor could not be required to work at two jobs and, for that reason alone, refused to impute to Donald any income other than his salary of R.R. Donnelley.

The statutory provisions relevant to this appeal provide as follows:

"Income" means actual gross income of the parent if employed to full capacity or potential income if unemployed or underemployed.[3]

If a parent is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income, except that a determination of potential income shall not be made for a parent who is physically or mentally incapacitated or is caring for a very young child, age three (3) or younger, for whom the parents owe a joint legal responsibility. Potential income

1. Kentucky Revised Statutes.

2. Kentucky Rules of Civil Procedure 52.01.

3. KRS 403.212(2)(a).

shall be determined based upon employment potential and probable earnings level based on the obligor's or obligee's recent work history, occupational qualifications, and prevailing job opportunities and earnings levels in the community. A court may find a parent to be voluntarily unemployed or underemployed without finding that the parent intended to avoid or reduce the child support obligation.[4]

The Kentucky child support guidelines may be used by the parent, custodian, or agency substantially contributing to the support of the child as the basis for periodic updates of child support obligations and for modification of child support orders for health care. The provisions of any decree respecting child support may be modified only as to installments accruing subsequent to the filing of the motion for modification and only upon a showing of a material change in circumstances that is substantial and continuing.[5]

██ The purpose of the statutes and the guidelines relating to child support is to secure the support needed by the children commensurate with the ability of the parents to meet those needs. "Both our statutory scheme and our case law demand that whenever possible the children of a marriage should be supported in such a way as to maintain the standard of living they would have enjoyed had the marriage not been dissolved."[6] KRS 403.212 mandates that earnings and income from all sources be considered when setting child support. While we agree that it is generally not appropriate to impute additional income to a parent already working a full 40 hour week, we disagree with the trial court's resolution of the issue as one of law. Rather, we believe that the issue is one of fact as reflected in the following reasoning employed by the Virginia Court of Appeals when confronted with the issue:

> [A]s a general rule a court should not impute to a person income from more than one job. However, this is not a rule to be applied in all cases as a matter of law. Depending upon the circumstances peculiar to each case, particularly where there is a history of a spouse having had two jobs, the trial court may find it appropriate to consider imputing to a spouse income from more than one job. The court should consider the previous history of employment, the occupational qualifications, the extent to which the parent may be under employed in the primary job, the health of the individual, the needs of the family, the rigors of the primary job and the second job, and all other circumstances.[7]

██ *Cochran, supra* concerned the initial setting of child support. In the case *sub judice,* Donald was seeking a modification based on his voluntary reduction in income. It is incumbent upon the trial court, before addressing the issue in the context of the above factors, to make findings with respect to Donald's entitlement to a modification in the first instance. Stephanie argues that a support obligor who voluntarily reduces his income is not entitled to seek modification. Certainly a parent may not "voluntarily impoverish himself in order to avoid his support obligation."[8] Indeed, even some involuntary changes in circumstances are not sufficient grounds for modification if the change is the result of the obligor's voluntary ac-

---

4. KRS 403.212(2)(d).

5. KRS 403.213(1).

6. *Stewart v. Madera,* Ky.App., 744 S.W.2d 437, 439 (1988).

7. *Cochran v. Cochran,* 14 Va.App. 827, 419 S.E.2d 419, (1992).

8. *Commonwealth, ex. rel. Marshall v. Marshall,* Ky.App., 15 S.W.3d 396, 401 (2000). *See also Downey v. Rogers,* Ky.App., 847 S.W.2d 63, 65 (1993) (support obligor's inability both to meet his own needs and pay child support because of consumer debt is not a basis for a reduction in child support).

tion.[9] However, in the case *sub judice*, the trial court found that Donald continues to work full-time despite his voluntary reduction in hours. Thus, we are unwilling to hold, as Stephanie suggests, that Donald is not entitled to a reduction in his child support as a matter of law.

The trial court could find from the evidence that Donald quit his second job and reduced his overtime primarily to reduce his child support obligation. A "change in circumstances" contemplated by KRS 403.213(1) does not include voluntary changes made for the primary purpose to reduce the support owed. "Courts should not-and do not-view the freedom to deprive family members of support because of personal animosity or miserliness as one that deserves consideration or protection."[10] Thus, on remand the trial court should make explicit findings concerning the circumstances surrounding Donald's reduction in his income. On remand, the trial court should determine whether Donald is entitled to a modification by using factors similar to those outlined in *Cochran, supra.*[11]

Accordingly, the judgment is vacated and the matter is remanded for further proceedings consistent with this Opinion.

ALL CONCUR.

---

9. *Marshall, supra* (incarcerated support obligor held to be voluntarily unemployed despite inability to obtain employment).

10. Becker, *Spousal and Child Support and the "Voluntary Reduction of Income" Doctrine*, 29 Conn.L.Rev. 647, 658 (1997).

11. The test is similar to the one set forth in *Barbarine v. Barbarine*, Ky.App., 925 S.W.2d 831 (1996), which concerns a motion to reduce maintenance predicated upon the early retirement of the obligor.