RENDERED: MARCH 1, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1050-MR

CASEY SHANNON HENNESSY           APPELLANT

|  |  |
|---|---|
| v. | APPEAL FROM NELSON CIRCUIT COURT<br>HONORABLE CHARLES C. SIMMS, III, JUDGE<br>ACTION NO. 19-CI-00571 |

SANDRA DENISE HENNESSY           APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ACREE AND McNEILL, JUDGES.

ACREE, JUDGE: Casey Hennessy, Appellant, appeals the Nelson Circuit Court's

June 7, 2021 Findings of Fact, Conclusions of Law, and Supplemental Judgment,

wherein the circuit court resolved all contested issues between Appellant and

Sandra Hennessy, Appellee, following their divorce. On appeal, Appellant

contests (1) the circuit court's award of sole custody of their minor children to

Appellee; (2) the circuit court's visitation schedule that provides Appellant one

visit with the minor children per month; (3) the circuit court's omission of Appellant's student loans from marital debt obligations; (4) the circuit court's imputation of additional income to Appellant when calculating child support; (5) the circuit court's award of attorney's fees to Appellee; and (6) the circuit court's calculation of Appellant's maintenance and child support arrearages for November and December, 2019. We detect no error in the circuit court's judgment, and therefore, affirm.

## BACKGROUND

Appellant and Appellee were married on March 18, 1996 and were married for 24 years. They have four sons together: C.J., Evan, Logan, and Dillon. C.J. and Evan were already adults at the time Appellee filed for divorce, while Logan and Dillon were still minors. Since the time of filing, Logan and Dillon reached the age of majority.

The family took a vacation to Florida in summer of 2019. While in Florida, Appellant met a woman named Tiffany. Appellant engaged in an extramarital affair with Tiffany during the vacation. Appellant and Tiffany are now married and live together in Florida.

Appellant supported the family financially throughout the marriage. He worked as a firefighter for Louisville Fire & Rescue, starting in April of 2000. He ultimately reached the rank of captain. In combination with occasional side

jobs – with City of Bardstown, with B&R Fire Safety, and by moving furniture – Appellant earned nearly $97,000 in gross income in 2019. He holds a bachelor's degree in biology, a master's degree in public health, and multiple vocational certifications. By all accounts, the parties had a good standard of living during the marriage.

Appellee was a homemaker for most of the marriage and was primarily in charge of caring for the boys. In 2017, she began working part time for the Bardstown School System as a cafeteria worker, earning $11.33 per hour. After the parties separated, Appellee obtained full time employment as a benefits coordinator with Kentucky Indiana Foot & Ankle Specialists. There, Appellee earns or earned $13.00 to $14.00 per hour with a 32.5-hour work week; however, she does not have set hours. For 2020, Appellee's gross income was $23,457.46. Appellee has a high school diploma.

Appellant retired from Louisville Fire & Rescue while the dissolution action was pending, and now receives $4,179.84 monthly from the Kentucky Retirement Systems. He now works as a biology teacher in Florida, with gross monthly earnings of $3,869.20 as of January 2021.

Appellee filed for divorce on November 12, 2019. Divorce proceedings were contentious, with the circuit court noting "the parties' lackluster

-3-

history of cooperation." Additionally, the sons often heard Appellant and Appellee make disparaging remarks about one another.

The circuit court granted Appellee's motion for temporary custody of the two minor sons on November 20, 2019. The circuit court also granted Appellee temporary exclusive use of the marital home. On December 20, 2019, the circuit court entered a *pendente lite* order, wherein the court awarded Appellant visitation on alternate weekends, plus holidays. The circuit court ordered Appellant to pay temporary maintenance and temporary child support.

At a June 30, 2020 evidentiary hearing, the circuit court, among other rulings, held Appellee in contempt for failing to encourage the minor sons to visit their father. The court also ordered the parties to participate in family counseling with Lee Anne Gardner, a licensed marriage and family therapist. The parties agreed to sell the rental home – with sale proceeds to be applied to credit card debt – and to modify Appellant's visitation to every third Saturday. Eventually, visitation was again changed to one weekend per month, which must take place in Kentucky. During one of Appellant's visits to Kentucky, Appellant and Tiffany toured Maker's Mark distillery, while the boys waited outside.

According to Gardner's written report to the circuit court judge – which was not an exhibit at the final hearing but was both included in the record and attached as an exhibit to Appellant's brief – Logan and Dillon had lost respect

-4-

for their father because of his behavior. The boys expressed anger at their father and did not want to be forced to see him. Neither wanted to see Appellant's new wife. Gardner stated that, though both boys would be able to cope with the current visitation schedule should it be enforced, she did not believe it would improve their relationship with Appellant. Gardner recommended that the boys not be forced to see Appellant's new wife and recommended that visits be in Louisville should visitation be enforced.

The circuit court dissolved the marriage on July 3, 2020. The parties sold the rental home. A dispute over an AT&T bill necessitated another hearing where the circuit court ordered the parties to pay the AT&T bill from proceeds of the sale of the rental home. The parties split the remaining proceeds, each receiving $10,784.89.

At the March 29, 2021 final hearing, Appellee requested a continuance because Gardner was unavailable to testify. Though it denied the continuance, the trial court permitted Appellee to take a deposition of Gardner within sixty days. The court considered testimony from the parties and interviewed Logan and Dillon in chambers; during the interview, neither expressed interest in visiting Appellant and were opposed to traveling to Florida to visit him. Appellee ultimately failed to take Gardner's deposition.

On June 7, 2021, the circuit court entered its findings of fact, conclusions of law, and supplemental judgment which, due to the number of unresolved disputes between the parties, is thirty-five pages long. Therein, the circuit court assigned non-marital property, divided marital property, awarded Appellee sole custody, maintained the once per month visitation arrangement, awarded Appellee maintenance, child support, and temporary maintenance, and awarded Appellee $8,000 in attorney's fees, among other findings.

Appellant filed a motion to alter, amend, or vacate on June 18, 2021. Appellee contested several aspects of the circuit court's ruling. He also argued, for the first time before the circuit court, that his student loan debt should be considered marital debt. The circuit court agreed with Appellant that Appellee should not be awarded his portion of a COVID-19 stimulus check but denied the remainder of his motion.

Appellant now appeals. He mounts six challenges to the circuit court's judgment. Because there are no remaining minors among the parties' children, the issues of custody and visitation are moot. The Court addresses Appellant's remaining challenges in turn below.

**STANDARD OF REVIEW**

"In all actions tried upon the facts without a jury[,]" including actions for dissolution of marriage, "[f]indings of fact [] shall not be set aside unless

-6-

clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR[1] 52.01. A factual finding is clearly erroneous if it is "manifestly against the weight of evidence." *Wells v. Wells*, 412 S.W.2d 568, 571 (Ky. 1967). Conversely, a factual finding is not clearly erroneous if substantial evidence supports it. *Hunter v. Hunter*, 127 S.W.3d 656, 659 (Ky. App. 2003) (citing *Owens-Corning Fiberglass Corp. v. Golightly*, 976 S.W.2d 409 (Ky. 1998)). "Substantial evidence is evidence, when taken alone or in light of all the evidence, which has sufficient probative value to induce conviction in the mind of a reasonable person." *Id.* (citing *Golightly*, 976 S.W.2d at 414).

Though factual findings are reviewed for clear error, a trial court's maintenance award is reviewed for abuse of discretion. *Age v. Age*, 340 S.W.3d 88, 94-95 (Ky. App. 2011). The abuse of discretion standard also applies to allocation of marital property, *Davis v. Davis*, 777 S.W.2d 230, 233 (Ky. 1989), custody determinations, *B.C. v. B.T.*, 182 S.W.3d 213, 219-20 (Ky. App. 2005), visitation schedules, *Drury v. Drury*, 32 S.W.3d 521, 525 (Ky. App. 2000), and award of attorney's fees, *Sexton v. Sexton*, 125 S.W.3d 258, 272 (Ky. 2004). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

---

[1] Kentucky Rules of Civil Procedure.

# ANALYSIS

*Appellant's Student Loans*.

Appellant argues the circuit court erred by failing to classify one of Appellant's student loans as marital debt. Because both parties benefitted from his education, he argues he should be credited for his student loan debt.

This argument first appears in Appellant's June 18, 2021 motion to alter, amend, or vacate. "A party cannot invoke CR 59.05 to raise arguments and to introduce evidence that should have been presented during the proceedings before the entry of the judgment." *Gullion v. Gullion*, 163 S.W.3d 888, 893 (Ky. 2005) (citations omitted). Appellant had every opportunity to raise this issue prior to entry of the circuit court's supplemental judgment and failed to include his student loan debt in his final verified disclosure statement. Accordingly, this issue is not preserved for our review.

Even if this issue were preserved, Kentucky jurisprudence is not on Appellant's side. "Loans obtained to get an educational decree [sic] are considered non-marital debts." *Gildewell v. Gildewell*, 859 S.W.2d 675, 679 (Ky. App. 1993) (internal citations omitted). Stated more pointedly, "a student loan debt incurred during the marriage is the nonmarital debt of the party receiving the educational benefit associated with the loan[,]" and the circuit court is obligated to assign the

debt to such party. *Combs v. Ousley*, No. 2007-CA-001552, 2009 WL 276506, at *3 (Ky. App. Feb. 6, 2009).

In its August 11, 2021 order granting in part and denying in part Appellant's motion to alter, amend, or vacate, the circuit court found "absolutely no merit with this argument." We agree.

*Imputation of Appellant's Income*.

Appellant argues the circuit court, when calculating Appellant's income, abused its discretion by supplementing Appellant's income by $500.00 because of part-time work. He argues the testimony of both parties reflects he only worked part-time on an intermittent basis. He further argues the imputation of this additional money caused his child support obligation to be incorrect, and improperly weighed in the circuit court's decision to award attorney's fees to Appellee. The circuit court assigned an additional $500.00 of monthly income to Appellant "based on [Appellant's] history of self-employment during the marriage."

Again, factual findings are clearly erroneous if they are "manifestly against the weight of evidence[,]" *Wells*, 412 S.W.2d at 571, and are not clearly erroneous if substantial evidence supports them. *Hunter*, 127 S.W.3d at 659. "[I]t is not the function of an appellate court to reweigh the evidence on a question of fact[.]" *Whittaker v. Rowland*, 998 S.W.2d 479, 482 (Ky. 1999).

For purposes of child support, "income" is defined by statute as "actual gross income of the parent if employed to full capacity or potential income if unemployed or underemployed." KRS[2] 403.212(3)(a). This definition is rooted in sound policy: "[t]he purpose of the statutes and the guidelines relating to child support is to secure the support needed by the children commensurate with the ability of the parents to meet those needs." *Gossett v. Gossett*, 32 S.W.3d 109, 112 (Ky. App. 2000). Consistent with this policy, "[d]epending upon the circumstances peculiar to each case, particularly where there is a history of a spouse having had two jobs, the trial court may find it appropriate to consider imputing to a spouse income from more than one job." *Id*. (quoting *Cochran v. Cochran*, 419 S.E.2d 419, 421 (Va. Ct. App. 1992)). When deciding whether to impute income for purposes of calculating child support, appropriate considerations include previous employment history, the person's occupational qualifications, and whether the parent is under-employed in his primary occupation. *Id*. (quoting *Cochran*, 419 S.E.2d at 421).

We decline Appellee's invitation to evaluate whether Appellant is voluntarily underemployed by working as a high school teacher when he was previously employed as a captain with Louisville Fire & Rescue. Regardless, we believe sufficient evidence of record supports the circuit court's imputation of

---

[2] Kentucky Revised Statutes.

-10-

$500.00 of additional monthly income to Appellant. As the record reflects, Appellant possesses multiple occupational certifications and, with at least some regularity, used those certifications to earn supplemental income. Because it is appropriate to consider whether Appellant is able to ensure the needs of his children are met, *see Gossett*, 32 S.W.3d at 112, the circuit court's imputation of additional income based on Appellant's history of supplemental employment was not clear error.

<u>*Attorney's Fees*</u>.

Appellant contests the circuit court's award of attorney's fees to Appellee as an abuse of discretion. Appellee incurred $16,440.46 in attorney's fees, and the circuit court directed Appellant to pay Appellee $8,000.00. The circuit court determined Appellant has greater financial resources and ability to earn money, and that Appellant caused Appellee to incur unnecessary fees. Appellant argues Appellee's conduct caused delay in the divorce action; he argues Appellee's failure to abide by court orders caused additional motion practice.

"Generally, Kentucky courts apply the so-called American Rule regarding attorney's fees[;]" this rule "requires parties to pay their own fees and costs." *Rumpel v. Rumpel*, 438 S.W.3d 354, 360 (Ky. 2014). However, circuit courts, by statute, may shift the attorney's fees of one party to a divorce action to the opposing party:

The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

KRS 403.220. "The amount of an award of attorney's fees is committed to the sound discretion of the trial court[.]" *Gentry v. Gentry*, 798 S.W.2d 928, 938 (Ky. 1990). Under the statute, though the circuit court is required to consider the financial resources of each party prior to an award of attorney's fees, "[t]he statute does not require that a financial disparity must exist in order for the trial court to" make such award. *Smith v. McGill*, 556 S.W.3d 552, 556 (Ky. 2018). However, "financial disparity is still a viable factor for trial courts to consider in following the statute and looking at the parties' total financial picture." *Id.*

We conclude the circuit court did not err in its award of fees to Appellee. Based on his education and work history, Appellant has both greater financial resources and ability to earn income than Appellee – Appellee, for the bulk of the marriage, was a homemaker, and only occasionally worked part-time. As far as the circuit court's conclusion that Appellant's conduct caused Appellee to incur excessive fees, the circuit court "is in the best position to observe conduct

-12-

and tactics which waste the court's and attorneys' time and must be given wide latitude to sanction or discourage such conduct." *Gentry*, 798 S.W.2d at 938.

As Appellee notes, the circuit court heard testimony on a variety of actions that Appellant took during the pendency of the divorce. These actions include Appellant locking Appellee out of their rental home as Appellee attempted to prepare it for sale, Appellant returning to the marital home – in violation of an exclusive use order – and removing items from the garage, and Appellant locking Appellee out of a shared bank account so that Appellee could not pay their mortgage. These examples, and apparently several others, required additional motions to be filed with the circuit court. Though Appellant argues Appellee's conduct also requires motions to be filed, it is not the task of an appellate court to reweigh evidence on appeal. Accordingly, we find it was not arbitrary, unreasonable, or contrary to law – and here not an abuse of discretion – for the circuit court to award Appellee a portion of her attorney's fees.

*Child Support and Maintenance Arrearages*.

Finally, Appellant argues the circuit court made a factual error when it computed his child support and maintenance arrearage.

The circuit court entered a *pendente lite* order on December 20, 2019, which required Appellant to pay Appellee $2,750.00 in temporary maintenance and $768.17 in temporary child support per month – a total of $3,518.17 – which

was retroactive to November 12, 2019. The circuit court credited Appellant $3,000.00 for a deposit he made into a joint checking account, that Appellee had sole access to, at some point after November 12, 2019. Appellant began paying both his maintenance and child support obligations in January of 2020.

The parties could not agree upon the amount Appellant owed to Appellee for the period of November 12, 2019, to December 31, 2019. To determine Appellant's arrearage obligation, the circuit court calculated Appellant's daily obligation for November ($3,518.17 divided by thirty days), multiplied his daily obligation by nineteen (the remaining days in November beginning with November 12), and then added that amount to his monthly $3,518.17 obligation for December. This calculation yielded an arrearage of $5,746.30, and, after applying the $3,000.00 credit, the circuit court determined Appellant owed $2,746.30 to Appellee for that period.

Appellant argues on appeal that he, in fact, made three deposits into the joint account. He says that, in addition to the $3,000.00 deposit, he made deposits of $2,000.00 and $1,800.00 between November and January. However, as Appellee accurately notes, the second and third deposits were made after the period for which the circuit court calculated the arrearage. Appellant is not entitled to credit for deposits made after the period for which amounts in arrearage were in

dispute, *i.e.*, for January 1, 2020, or later.  We find no error in the circuit court's arrearage calculation.

## **CONCLUSION**

Based on the foregoing, we affirm the Nelson Circuit Court's June 7, 2021, findings of fact, conclusions of law, and supplemental judgment.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Vickie Masden Arrowood | Jason P. Floyd |
| Louisville, Kentucky | Bardstown, Kentucky |